A. H. NEWSOM and wife v. STEPHEN A. EARNHEART.

*Boundary—Elections—Registration.*

1. The boundaries of a district, in which an election was held upon the question of the " stock law" under the act of 1881, ch. 94, were described in the application to hold said election, as " well defined; *Held* that the words are not too indefinite to admit of proof to locate the boundaries. And where the beginning is " at a certain tract of land," the difficulty as to the uncertainty of the *point* of beginning is removed where there is a call for the outer boundaries of lands of successive proprietors, thence to a certain point.

2. Review of acts of assembly relating to the " Stock Law" for Rowan county by SMITH, C. J., and the act permitting detached parts of several townships to be formed into a single district, sustained.

3. Where a registrar gave notice that the registration of voters would take place at his residence, but kept the books and actually registered the names at his store some 300 yards distant, he having left word at the house for persons applying there to come to the store, *it was held* that the irregularity did not vitiate the registration and the election held under it.

(*Manly* v. *Raleigh*, 4 Jones Eq., 370, cited and approved.)

CIVIL ACTION tried at Fall Term, 1881, of ROWAN Superior Court, before *Eure, J.*

Verdict and judgment for defendant, appeal by plaintiffs.

*Messrs. McCorkle & Kluttz,* for plaintiffs.
*Mr. John S. Henderson,* for defendant.

SMITH, C. J.   The defendant took into his possession and impounded a cow, belonging to the feme plaintiff and found running at large on his unenclosed land within the limits of the territory hereinafter defined, for the recovery of possession whereof and damages for detaining, the present action is prosecuted.   The defendant justifies the taking by virtue of certain acts of the general assembly, to the provis-

ions of which, so far as they bear upon the matters in dispute and tend to elucidate and explain them, it becomes necessary to advert.

In 1879 an act was passed rendering it unlawful for any live stock to run at large within the limits of Rowan, and certain other counties specified by name, upon condition that the qualified voters in them respectively shall adopt the provisions of the act.

A like provision, and upon the same condition of the approval by a majority of the qualified voters therein, is made for a district in Rowan county of definite and described boundaries.

Section 3 suspends the operation of the law until a good and lawful fence has been erected within the boundaries of any county or territory proposed to be enclosed, with gates at all the public roads that enter therein.

ʃ Section 7 makes the wilful permitting by the owner of his live stock to run at large in such territory a misdemeanor, and section 8 contains these words: " It shall be lawful for any person to take up any live stock running at large within any township or district, wherein this act shall be in force, and impound the same," with a right to retain the trespassing animal until certain specified charges and damages caused by it have been paid.  Acts 1879, ch. 135.

At the next session was passed another act, declared in its title to be " for the protection of crops in Rowan county," and which in section 1 assures to every land owner " the entire and exclusive use of his own soil," and makes an entry thereon without leave, unlawful; and in section 2 forbids the owner of stock to permit it to enter upon the land of another except with his consent.

Section 3 repeals section 40 of chapter 34, and section 1 of chapter 48 of the Revised Code; section 43 of chapter 32 and section 1 of chapter 48 of Battle's Revisal; and section 3 of chapter 135 of the acts of 1879.

Section 5 confines the enactment to the county of Rowan, postpones its operation until September 1st, 1880, and until the county shall have constructed a fence along the boundary line between it and the county of Stanly.  Acts 1880, ch. 24.

In the ensuing year the act of 1879 was amended and its provisions extended to four other named counties, and an additional section inserted after section 20, as follows:

" That upon the written application of one-fifth of the qualified voters of any district or territory in Lincoln, Catawba, Alexander, Burke, Guilford, Randolph, Rowan or Gaston counties, whether the boundaries of said district follow township lines or not, made to the county commissioners at any time, and setting forth well defined boundaries of said district, it shall be the duty of said commissioners to submit the question of said " Stock Law " or " No stock law " to the qualified voters of said district."   Acts 1881, ch. 94.   Again a few days later and at the same session was passed another statute " for the better protection of portions of Rowan county where the stock law now prevails."   It adopts sections one, two and three, and repeals sections four and five of the act of 1880, and re-enacts sections eight, nine, ten, eleven, twelve, thirteen and fourteen of the original act of 1879.

Pursuant to the requirements of section two of the first act of 1881, the prescribed number of qualified voters within the district, whose boundaries are set out in their written application to the county commissioners to cause to be submitted to said voters the question whether the stock law should be put in force in those territorial limits, procured an order for an election in which the popular will would be expressed in response to the proposition.   An election was accordingly held after a new preparatory registration of the electors, and the necessary number of affirmative votes having been reported, the commissioners declared the result,

and published notice that the law had gone into effect in the district.

The court submitted four issues to the jury, and they find that the feme plaintiff is the owner of the cow; that the defendant took her into his possession; that the plaintiff had not sustained damage from the defendant's act; and that the cow had been released from the defendant's custody by the plaintiff, A. H. Newsom, with the assent of his wife.

Judgment having been rendered on the verdict for the defendant, the plaintiffs appeal; and the sufficiency in law of the exceptions to the rulings of the court, upon this succinct statement of facts, we now proceed to examine.

1. The first exception embodied in several requests for instructions that were not given to the jury, is to the sufficiency of the descriptive lines surrounding the territory, as contained in the application to the commissioners, within the words of the act which requires a "*setting forth well defined boundaries,*" of the proposed district. It is insisted that the descriptive language is, upon its face and so to be adjudged, so indefinite and vague as not to admit of location by proof.

His Honor declined so to hold and left to the jury to ascertain, if from the testimony they could do so, the position of the several roads, rivers, and other objects called for, as constituting the boundaries, and these located would be "well defined" within the meaning of the statute. In the argument before us the objection was directed mainly to the alleged uncertainty of the place of beginning—being "at the Poor House tract of land (not including the Poor House building)" which is or may be an extended surface, and not a point.

The difficulty is removed by the call in the line to be run of the outer boundaries of lands of successive proprietors, of whom the number is very large, "thence in a north easterly

direction to the Yadkin river near the mouth of Crane creek."

The beginning then is at the point of contact and divergence of the line of the Poor House tract and that of the first named proprietor, and the line will proceed along the outer boundaries of the successive proprietors until it meets the waters of the Yadkin at the designated spot.

There would seem to be no difficulty in determining the proposed limits of the district and this was properly left to the jury.

2. The second exception was to the refusal of the judge to charge that before the stock law could have practical force, and the defendant seize the cow, a fence should have been erected around the district.

This was a prerequisite to the exercise of the right to impound under the act of 1879.

But that provision contained in section 3 is expressly annulled by the repealing act of 1880, ch. 24, § 3, and again in the re-enactment of this repealing section in the act of 1881, ch. 139, § 1. There is then, no necessity for an enclosing fence.

3. The third exception is to the irregular manner of registration, in that, while the notice to the voters desiring to register directed them to the residence of the registrar, the books were kept and the registering actually conducted at his store some three hundred yards distant. This irregularity does not in our opinion vitiate the registration made and the election held in accordance with it. It appears that word was left at the house for every elector, who might there apply to have his name registered, to be advised of the change of place, and while it does not appear, nor is it suggested that a single elector who applied failed to be registered, it is in proof that the registration was full and the books were kept open on the day of election, to enable all who had not been before, then to have their names entered.

Every substantial object of the law has been attained, and a deviation from the directions of the law, in the course pursued, while by no means to be encouraged in those charged with its execution, ought not to be allowed to avoid the election and neutralize its results.

4. The plaintiff insists that the provision of the statute which permits the association of detached parts of several townships into a single district, constituted for the sole purpose of giving effect to a statute within its limits which did not prevail elsewhere, is in violation of the constitution of the state, which recognizes only the territorial division into county and township municipal organizations, and is void. The case cited, *Ex Parte Wall*, 48 Cal., 321, denies validity to all enactments which are contingent upon the approval of the popular vote, indeed to all local option legislation, upon grounds which are expressly repudiated in *Manly v. City of Raleigh*, 4 Jones Eq., 370, and cases determined at the present term. We see no reason why convenient territorial districts may not be formed by the union of several townships or fragmentary parts of them, or by the severance of a single township, as the legislature may deem best for the interests of those who there reside. Certainly the power to pass laws, operating within a limited locality, has been too long exercised by the general assembly to be now called into question, and it is well settled that its operation at all may be made to depend upon the will of the electors within its bounds expressed at the ballot-box.

The various exceptions taken to evidence admitted, based more upon the legal effect of the fact proved than upon the competency of the proof adduced to establish it, have not been pressed upon our attention, and are substantially disposed of in what has already been said. We do not therefore notice them in detail. We find no error in the record, and affirm the judgment.

No error.                                    Affirmed.