## COMMISSIONERS OF GREENE COUNTY v. COMMISSIONERS OF LENOIR COUNTY.

### *Local Assessments—Fence Law—Parties.*

1. Special burdens imposed for local improvements by the Legislature are not unconstitutional. They are considered not so much a burden, as a compensation for the enhanced value which the taxed property is supposed to derive from the work.

2. The Legislature (Laws, 1883, chaps. 70 and 214), erected adjoining territory in two counties into a no-fence district, and directed the commissioners of the two counties to erect a fence around said district and to defray the expense by a tax on all the realty in the district. More fencing was required in one county than in the other; *Held*, that a uniform tax on all the realty in the district must be imposed to pay the expense of the fence, irrespective of the amount of fencing required in each county. It is immaterial that parts of two counties are united in creating the district.

3. In such case, where the tax-payers in such district, resident in one of the counties, have paid more than their proportion of the tax to build the fence, the county commissioners of that county are the proper parties to bring an action to correct the wrong, and when the money is collected, it will be retained as a special credit to each of such tax-payers in a general collection of county taxes.

(*Cain* v. *Commissioners*, 86 N. C., 8; *Newsom* v. *Earnheart*, *Ibid*, 391; *Shuford* v. *Commissioners*, *Ibid*, 552, cited and approved).

CIVIL ACTION tried before *Shepherd, Judge,* upon a demurrer to the complaint, at Spring Term, 1884, of LENOIR county.

The facts are fully stated in the opinion.

His Honor sustained the demurrer, and plaintiff appealed.

*Messrs. W. C. Monroe* and *E. T. Albritton,* for the plaintiffs.
*Mr. G. V. Strong,* for the defendant.

SMITH, C. J. In section 1, chapter 70, of the acts of the General Assembly, passed at the session held in 1883, it was enacted:

"That it shall be unlawful for any live stock (a word defined in section 10), to run at large in Lenoir and Greene counties,

within the following boundaries, to-wit: beginning on the north bank of Neuse river, at the Lenoir and Wayne county line, thence with said line to the Greene county line, thence with the line between Greene and Wayne counties to the run of Nahunta creek, thence down said creek to Contentnea creek, thence down said creek to Neuse river, thence up said river to the beginning."

The portion of this boundary formed by the last mentioned creek and the Neuse river into which it flows, as deep watercourses are declared in section 12 to be a sufficient barrier against the incursions of stock, and no fence is there required to be built. The same section requires the boards of the counties, from which is taken the territory to form the district, to erect an enclosing fence around the residue of the boundary, with gates at all the entering highways; and, to defray the expense of the required work, the act declares that it shall be lawful for the said commissioners to levy and collect an assessment upon all the realty in the aforesaid territory.

Provision is made in the section next preceding, for giving notice of the completed construction of the fence, ten days after which the act goes into full operation and its prohibitions cover the district.

A month later during the same session was passed another act, declared in its title to be "supplemental and amendatory," by which the remaining part of Greene county composed within designated lines, of which Contentnea creek (here distinguished from another stream of the same name as "Big Contentnea,") constitutes a part and separates the two sections in that county, is erected into a district and subjected to the same general conditions, chapter 214.

The other sections appropriate to the district thus established are the provisions of the former enactment relating to the construction of its enclosing fence and the raising of means to meet the expenses thereof, as well as the method of putting the act in operation. The barrier intervening between the separate districts, consisting in part of a fence and in part of a natural water course,

is not removed so as to open egress from one into the other, and thus render needful to Lenoir the boundary fence required to enclose the additional territory in Greene; but the original fencing and streams remain and are a full protection to all the territory in Lenoir. The value of the taxable real estate in the part of Greene which enters into the formation of the first district is $562,969.61, and the cost of constructing the fence therein is $1,554$\frac{19}{100}$, while the value of the real estate in the part taken from Lenoir is $1,090,112, and the cost of the fence in that county is $1,725. In like manner it is ascertained that the value of the taxable real estate in the remaining part of Greene, constituting the second district, is $564,945, and the cost of erecting the necessary fence therein is $3,679$\frac{68}{100}$.

The commissioners of Lenoir refused to act in co-operation with the commissioners of Greene in providing for a uniform assessment upon all the lands lying in their respective counties to meet the expenses of enclosing the first district, or to recognize any obligation resting on Lenoir to contribute at all to the erection of the additional fencing required under the second act; insisting that they were required to build the part of the line of fence in their county only. In consequence and in order to secure to Greene the benefits of this legislation, the commissioners of Greene have been compelled to provide the means of paying for the entire structure in their county.

The present action looks to a re-adjustment of the expenses incurred, and a coercing judgment against the defendants, compelling them to make such a re-assessment upon the real estate in the portion of the district taken from Lenoir as shall be uniform with that rightfully falling upon the real estate in the part taken from Greene, and upon this basis refund the excess paid by the latter.

These are the allegations of the complaint, and for the purpose of passing upon the issue made by the demurrer must be assumed to be true. The demurrer assigns, as the grounds thereof,

(1) That the lands in Lenoir are only bound to pay for so much of the structure as lies within the county limits.

(2) That the excess in the payments made under the assessment in Greene was unnecessary and officious, and furnishes no just ground for a claim against them.

(3) That the right of action, if residing in any one, is in the persons interested in having the act carried out and the' district properly protected from the inroads of outside stock, and not in the plaintiffs.

Upon the hearing, the Court gave judgment sustaining the demurrer and dismissing the action, from which the plaintiffs appeal. The validity of this form of legislation, and its consistency with constitutional requirements, have been upheld in the several adjudications to which attention is called, and which are all reported in the 86th volume, *Cain v. Commissioners*, page 8; *Newsom v. Earnheart*, page 391; *Shuford v. Commissioners*, page 552. In the first of these it is said by the Court, " It creates a community of interest in upholding one barrier in place of separate and distinct barriers for each plantation, and thus in the common burden, lessens the weight that each cultivator of the soil must otherwise individually bear.

"As the greater burden is thus removed from the land-owner he, as such, ought to bear the expense by which this result is brought about. The special interest benefited by the law is charged with the payment of the sum necessary in securing the benefit. This and no more is what the statute proposes to do, and in this respect is obnoxious to no just objection from the taxed land-proprietor, as it is *free from any constitutional impediments.*"

An assessment for local improvements is not considered so much a burden as it is an equivalent or compensation for the enhanced value which the taxed property is supposed to derive from the work. It is an instance of the application of the general maxim *qui sentit commodum debet sentire et onus*, the consideration paid for the special local benefit conferred.

This is the underlying principle of the system of local assessment for local advantages, and in its development and application to the present case most manifestly requires that the lands in

Lenoir and Greene constituting the district under the first act, without any reference to county lines, should be assessed and charged according to value and at a uniform rate. The common fence dispenses with separate fences throughout the circumscribed territory for separate farms, and thus the relief is diffused generally among tax-paying owners.

The result is not affected by the fact that parts of two counties are united in creating the district, and that separate yet concurring action of the commissioners in each is necessary to the execution of the law. For the purpose of local assessment it is a single district, as much so as if constituted of part of one county, and as the levy of taxes is confined to county officers, their agency in enforcing them must of course be independently exercised. It was their duty after ascertaining the expense of the required work to inquire what *per centum* of tax upon the aggregate value of all the real estate subject to assessment in the entire district would suffice to meet it, and then levy such to raise the needed amount. The plaintiffs have cause of complaint against the defendants for refusing their co-operation. But the other territory in Greene is erected into a separate district, with a separate enclosure and must bear its own expenses. It has the benefits of the fence constructed at the cost of the first district, so far as it forms a dividing line between them.

It cannot rightfully demand a construction from the tax-payers in Lenoir whose property derives no advantage whatever from the additional fencing. Its full protection is secured by that in whose building they have to participate.

Nor do we find any difficulty in construing the sections of chapter 214 which refer to chapter 70.

They are obviously intended to introduce the mode of procedure prescribed in the former for carrying into effect the provisions, having a similar object in view, contained in the latter. No concert of action was necessary with the authorities of other counties, and hence they were to assess the lands in the separate district so as to raise a sufficient sum to meet the expense of the required fence around it.

We think, too, the mandatory authority of the court may be invoked to compel the performance of the denied obligation imposed upon the defendants.

· They have failed hitherto to levy the full assessment upon the real estate in their county liable under the statute, and this has compelled an excessive levy upon the owners of real estate in Greene in order to secure the beneficial objects of the law.

The adjustment must be among those respective tax-payers, but it can only be attained through a new assessment collected and paid over to the county authorities of Greene to replace the moneys wrongfully collected in that county, and to be held in trust for those who have over-paid, as should have been that wrongfully used in payment for the fence.

The representative county agencies are the appropriate parties to an action to correct the wrong and bring about the pre-existing state of things, as if it had not been done. The very fact that said boards must unite in accomplishing what ought to have been done in the beginning shows the propriety of the present action. The trust fund when received belongs to the over-charged tax-payers and may be retained as a special credit to each in a general collection of county taxes, and thus the wrong redressed.

There is error, and the judgment must be reversed.

Let this be certified. Reversed.