This is a proceeding instituted by the plaintiff, City of Asheville, *Page 284 
pursuant to the provisions of its charter, Private Laws 1901, ch. 100, sec. 65, to widen West College Street and have damages and benefits, sustained by the property affected, assessed. Defendants, Wachovia Loan and Trust Company and Weaver, owners of a lot upon which benefits were assessed, excepted to the report of the jury, and from a judgment confirming same appealed to the Superior Court of Buncombe County. The exceptions were overruled, and defendants appealed to this Court.
The City of Asheville was incorporated by ch. 100, Private Laws 1901. Section 65 of said chapter provides: "Whenever, in the (361) opinion of the Board of Aldermen of said city, it is advisable to obtain land or right of way therein for the purpose of opening a new street therein, or widening or straightening a street therein, or making culverts or waterways for carrying water out of any street therein, and said Board of Aldermen and the owner or owners of such land or right of way cannot agree as to the amount of damages consequent thereupon, as well as to the special advantage which may result to the owner or owners thereof, by reason of such opening, widening or straightening of street, or making such culvert or water-way, said Board of Aldermen may direct the Mayor of said city to issue, and he shall thereupon issue, his writ, under the seal of said city, commanding a policeman thereof to summon a jury of six freeholders of said city, unconnected by consanguinity or affinity with any of the persons supposed to be affected by said proposed improvement, in which writ the proposed improvement shall be fully described, and the persons who are supposed to be affected thereby shall be named. Such policeman shall, in obedience to said writ, summon a jury of six freeholders as aforesaid, and direct them to assemble at the Mayor's office in said city at a time by such policeman appointed, not less than twenty nor more than thirty days after the date of such writ. Such policeman shall also serve notice of the time of meeting of the jury upon all the persons who are named in such writ as supposed to be affected by such proposed improvement, at least fifteen days before the date appointed for the meeting of the jury. Such notice shall be in writing, and signed by said policeman, and addressed to the person or persons upon whom service thereof is made, and shall state the time appointed for such meeting of the jury, and designate briefly the proposed improvement, and may be issued as a single notice to all persons named in said writ, or as a separate notice to every one of them, or to any two or more of them. Such notice shall be served upon the person or persons therein named, or his, her (362) or their agent, by reading the same to him, her or them. Such policeman shall duly return such writ and all such notices with his return thereon in writing endorsed, together with any such order of the Mayor to said Board of Aldermen, at its next meeting after the *Page 285 
time appointed for the meeting of the jury aforesaid. At the time appointed for the meeting of the jury such policeman shall cause the jury to assemble at the office of the Mayor of said city, where every one of them shall be sworn by such Mayor or other competent person to faithfully, truly and impartially assess the damages, if any, which, in his judgment, will be done to the property of every person named in the writ, and will also assess any special benefit, advantage or enhanced value which will be caused to the property of any person named in the writ. Immediately after the jury shall have been so sworn they shall proceed, accompanied by such policeman, to view the land of every person named in the writ, and shall assess the damages, if any, to every one of the premises which they have viewed, and the special benefit, advantage, or enhanced value, if any, which will accrue by reason of said proposed improvement to every one of the premises which they have viewed. Said jury shall forthwith return to said Board of Aldermen, by filing it with the clerk thereof, a statement in writing, signed by every one of them, or a majority of them, in case they cannot agree, setting forth distinctly a full, itemized report of their proceedings, and stating separately the amounts of damages or special benefits, or both, as the case may be, which they have assessed to every one of the premises so viewed by them. At the first meeting of the said Board of Aldermen after a complete report or reports upon the matter in said writ ordered to be decided shall have been filed as aforesaid, said Board of Aldermen shall consider and pass upon such report or reports. If said Board of Aldermen shall determine that any item of damages so assessed is excessive, it may reject such report or reports, and (363) discontinue the proposed improvement, and in case of such discontinuance no other proceeding shall within three months thereafter be commenced for a similar purpose in relation to any of the premises affected thereby, or any part of the same, without the written consent of the owner thereof. It shall be competent for said Board of Aldermen, in passing upon any such report or reports, to decrease or remit any item or items of special benefit, advantage or enhanced value therein contained, if it think proper to do so. If said Board of Aldermen shall think proper, it shall order such report or reports, or such report or reports so modified by it, as to special benefits or advantages or enhanced value, approved, and the lands condemned in said proceedings shall vest in said city so long as they may be used respectively for the purpose of said improvement, so soon as the amount of damages assessed to them respectively, decreased by the amount of special benefit, advantage and enhanced value, so assessed against them respectively, shall have been paid or tendered to the owner or owners of such premises respectively, or deposited as hereinafter provided." *Page 286 
Provision is made for an appeal by any person dissatisfied with the report of the jury, and the order confirming same, to the Superior Court of Buncombe County.
Pursuant to the provisions of said charter, at a meeting of the Board of Aldermen of said city, a resolution was adopted declaring that, in the opinion of said board, it was advisable to obtain a strip of land, or right of way thereon, on the north side of West College Street, between North Main and Haywood streets, for the purpose of widening West College Street between the points named. The resolution sets out the width to which it was proposed to widen the street, referring to the survey made by the city engineer. It is also recited that it appears to the board that said board and the "owner or owners of such land or right (364) of way cannot agree as to the amount of damages consequent thereon, as well as to the special advantage which may result to the owner or owners thereof by reason of such widening of West College Street." It was thereupon ordered that the Mayor issue his writ commanding a policeman to summon a jury of six freeholders in accordance with the provisions of the charter to assemble and view "the premises of all persons who are supposed to be affected thereby."
Pursuant to said resolution the Mayor issued his writ, in which the proposed improvement was fully described and the persons supposed to be affected thereby were named, commanding the policeman to summon a jury and to notify the persons named of the time and place of meeting, etc.
The jury met in accordance with the writ and discharged the duty imposed upon them, making report to the Mayor and Aldermen. Among other things, they found that the lots of defendants were specially benefited in the amounts named. At a meeting of the Board of Aldermen held subsequent to the date of filing said report, a resolution was adopted confirming said report, from which order the defendant appealed.
The record contains the following agreement in regard to the lot of defendants Wachovia Loan and Trust Company: "That the lot of land referred to in the notice of appeal herein, or any part thereof, was not obtained, taken, condemned, appropriated or used by said city in and for the widening of said street but the said lot of land above mentioned, and every part thereof, is situated and abutting on the south side of said street; that said street was not widened by the obtaining, taking, condemning, appropriating or using of any property on the south side of said street, but, on the contrary, said street was widened wholly by the obtaining, taking, condemning, appropriating and using of property on the north side of said street." And in regard to lots of appellant (365) Weaver: "That the lots of land referred to in the notice of appeal herein, or any of them, or any part of them, was not obtained, *Page 287 
taken, condemned, appropriated or used by said city in and for the widening of said West College Street; that the said lots above mentioned, and all of them, and every part of them, are situated on the north side of North Water Street, in said city, and said lots or any of them, or any part of any of them, are not situated or abutting on said West College Street, but, on the contrary, are more than one hundred and sixty feet from said street."
The defendants filed the following demurrer to the pleadings: "Now comes the defendant in the above-entitled cause and demurs and says that upon the whole record herein, including ch. 100, sec. 65, of the Private Laws of North Carolina, Session 1901, and the agreed statement of facts, the plaintiff has no right, power or authority to assess or cause to be assessed against the property of the defendant any sum whatsoever."
From a judgment overruling said demurrer, defendants appealed.
The demurrer calls into question the right of the plaintiff under the powers granted in its charter to assess special benefits for the purpose of paying the cost of widening West College Street. The learned counsel for defendants stated in his argument that he did not deny the right of the Legislature to confer upon the city of Asheville the power to assess against property within said city the cost of public improvements by which such property received peculiar and special benefits. He insists: First, that the power is not granted; second, that if granted, it is invalid, because the (366) method provided for its exercise is not in accordance with the right of the land-owner, in that no taxing district is established, either by the charter or by the resolution of the Board of Aldermen; that the attempt to confer upon the Mayor the power to fix such district in his writ by naming such persons "as are supposed to be affected" is invalid. He also urges objections to the mode of procedure, which we will notice later.
The power to impose upon property the cost of public improvements, measured by the peculiar and special benefit sustained, has been settled beyond controversy. It is uniformly held that this power is based upon the right to tax, and not that of eminent domain. In Baumann v. Ross,167 U.S. 548 (589), it is said: "The Legislature, in the exercise of the right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading or the repair of a street, to be *Page 288 
assessed upon the owners of land benefited thereby," citing a large number of cases. Cooley on Tax., 1152. The subject was discussed, the authorities reviewed and the power sustained in an able opinion by Mr.Justice Shepherd in Raleigh v. Pace, 110 N.C. 32. It is equally well settled that "assessments being a peculiar species of taxation, there must be a special authority of law for imposing them. The ordinary grant to a municipal corporation of power to levy taxes for municipal purposes will not justify any other than ordinary taxes. This would follow from the general rule which requires a strict construction of all such grants; but the principle has peculiar force when applied to powers in themselves exceptional. And it is always held that such a power, when plainly granted, is to be construed with strictness, and as strictly pursued by the authorities, who are to levy the tax." 2 Cooley on Tax., 1158. The same principle is announced by Judge Elliott in his (367) work on Roads (sec. 544), cited with approval in Greensboro v. McAdoo, 112 N.C. 359. While this most salutary principle is to be kept in view, it is also true that, if the power is given, the statute will not be declared invalid, because it does not specifically prescribe the details of the procedure to be pursued in its exercise. Raleigh v. Pace,supra. While the language employed in the charter is not so clear as might be desired, we are of the opinion that the intention of the Legislature to confer the power, both of eminent domain and to assess special benefits, is sufficiently shown. Some confusion arises from a failure to grant them separately.
The first portion of the section prescribing the preliminary steps for obtaining land or a right of way therein, for the purpose of opening or widening a street, when an agreement as to the amount of damages, as well as special benefits, which may result to the owner, cannot be had, if not explained by other parts of the section, would seem to sustain defendant's contention. When the duty of the jury is prescribed, we find that they are to be sworn to assess "the damages, if any, which will be done to the property of every person named in the writ," also to assess "any special benefit, advantage or enhanced value which will be caused to the property of any person named in the writ." They are directed, after being sworn, "to view the land of every person named in the writ and assess damage, if any, to every one of the premises which they have viewed and the special benefit, advantage and enhanced value, if any, which will accrue by reason of said proposed improvement to every one of the premises which they have viewed." The "persons named in the writ" are those "who are supposed to be affected" by the proposed improvement. This is, of course, to include not only those whose lands are to be taken, but those whose lands are to be "specially benefited." Thus the language used in the first portion of the section is explained *Page 289 
and its scope enlarged. When the report is filed, the Board (368) of Aldermen are directed to consider and pass upon it. "If they shall consider that any item of damage is excessive, they may reject the report and discontinue the proposed improvement. If they consider that any item of benefits is excessive, they may decrease or remit the same." It thus clearly appears that the Legislature had in mind both the right of condemnation and of assessing benefits, and intended to confer both on the city of Asheville.
Provision is further made in case of an appeal: 1. When one whose land has been taken appeals, the damages assessed, less the benefits, shall be deposited with the Clerk of the Superior Court to await determination of the appeal. 2. When one against whom special benefits have been assessed appeals, the amount so assessed is declared to constitute a lien upon such land as of the time at which the board passed upon the report. Provision is made for enforcing the payment of the special benefit so assessed.
It is an elementary rule of construction that the entire statute, or at least so much of it as relates to the matter in controversy, must be read and the intention of the Legislature gathered therefrom and given effect. Unless the construction sustaining the power, as claimed by plaintiff, be given, much of the language found in section 65 becomes meaningless.
The defendant attacks the statute and the proceeding thereunder for that, (1) no taxing district is established within which the improvement is to be made and the special benefits assessed; (2) that no provision is made for ascertaining the cost of the proposed improvement and apportioning among the lots or pieces of property benefited.
For manifest reasons it is uniformly held that the Legislature must establish the district, or assign the duty to do so, either to the Board of Aldermen or commissioners to be appointed in some lawful way. It is impracticable to assess benefits upon property for local (369) improvements, unless the territory within which such property is located is, in some way or by some means, ascertained. It is not necessary that the boundaries of the district should be coterminous with any of the political divisions of the State. In People v. Mayor, etc.,4 N.Y., 419, the district established for the assessment of special benefits was "the streets, avenues and squares within the first seven wards," etc. In Busbee v. Commissioners, 93 N.C. 143, the county of Wake is declared to be a taxing district for the purpose of levying an assessment to pay the cost of a common fence. In Commissioners v. Commissioners,92 N.C. 180, the counties of Lenoir and Greene were combined into a taxing district for the same purpose. The principle finds recognition in our drainage laws. Rev., 3997. In Baumann v. Ross, 167 U.S. 589,Gray, J., says: "The class of lands to be assessed for the purpose may *Page 290 
be determined either by the Legislature itself, by defining a territorial district, or by other designation; or it may be left by the Legislature to the determination of commissioners, and may be made to consist of such lands and such only as the commissioners shall decide to be benefited."Spencer v. Merchant, 125 U.S. 345. In the statute under consideration, inIrrigation Dist. v. Bradley, 164 U.S. 112, commissioners were appointed to lay off irrigation districts.
While expressions found in opinions and authors sometimes indicate that without any territorially defined boundaries, assessments may be levied upon such parcels of land as the jury or commissioners think benefited, we find that usually, if not uniformly, some designation is made confining them to fixed limits. Such, certainly, is the result of our investigation of the statutes passed by the Legislature of this State. As we have seen, and as uniformly laid down by writers on the subject, the Legislature may, in the statute, fix the limits of the district, or (370) if it deem best, confer this power upon the local authorities, or upon the commissioners or jury appointed to make the assessment. It is held by all of the authorities that when the district is created, by either of the lawful agencies, all of the property within such district must bear its proportionate part of the cost of the improvement measured by the special benefit accruing to it. It is generally held that fixing the limits of the district is a legislative function, and when exercised is not subject to review by the courts. "The whole subject of taxing districts belongs to the Legislature; so much is unquestionable. The authority may be exercised directly, or, in the case of local taxes, it may be left to local boards or bodies; but in the latter case the determination will be by a body possessing, for the purpose, legislative power and whose action must be as conclusive as if taken by the Legislature itself. It has been repeatedly decided that the legislative act of assigning districts for special taxation on the basis of benefits cannot be attacked on the ground of error in judgment regarding the special benefits and defeated by satisfying a court that no special and peculiar benefits are received. If the Legislature has fixed the district and laid the tax for the reason that, in the opinion of the legislative body, such district is peculiarly benefited, its action must in general be deemed conclusive." Cooley on Taxation, 1258. Judge Cooley says that there are exceptions to this general principle, some of which he names.
Judge Elliott, conceding that the "numerical weight of authority overwhelmingly" sustains the general doctrine, says that he very much doubts "whether in any case the right of arbitrary decision, by the Legislature, can be defended on strict principle," and that he "cannot forbear suggesting that the judiciary ought not to, and, in truth, cannot *Page 291 
surrender its power to decide the questions affecting the right to impose special burdens on private property."
An interesting discussion of the general principles underlying the subject may be found in the very able opinions of the Court (371) in the case of Norwood v. Baker, 172 U.S. 269, and the subsequent cases modifying and, thought by some, overruling it. Few subjects have given the courts more anxious consideration. On the one hand is an evident desire to sustain the action of the Legislature and of legislative agencies in dealing with the subject, and yet equally evident is the recognition of the danger of wrong and injustice to the citizen by giving to such agencies arbitrary power. It is difficult to reconcile the doctrine in a legal system which so jealously guards the property rights of the citizen, by which personal property of inconsiderable value may not be taken by another citizen except after a trial in open Court with a jury to pass upon disputed facts and a Judge learned in the law to declare his legal rights, with that which permits a Board of Aldermen with no other guide than their judgment to impose burdens for benefits, real or supposed, upon his home, with no right to be heard and no power to review their judgment or correct their mistake. Learned Judges frequently admit that wrong and injustice may be done, but see no way by which the taxing power upon which, as we have seen, the right is based, may be controlled by the judiciary.
We have no disposition to make any departure from the generally accepted doctrine, but we deem it appropriate to say that, in administering the law and exercising the powers conferred, it is the duty of those entrusted with it to proceed with cautious and careful watchfulness of the substantial right of the citizen. We do not intend to suggest that the municipal officers in this case have not done so.
It is held in Baumann v. Ross, supra, that the duty to fix the limits of the taxing district may be imposed upon the same commissioners who assess the benefits. While we see no objection to this course, the district should be defined before the assessment is made. It would seem just that the zone of benefits should control the boundaries (372) of the district, and that all property in such district should be assessed to pay the cost, not to exceed the benefits accruing to it.
We are confronted with the fact that in the charter of plaintiff no provision is made for laying off the taxing or assessment district, nor does it appear that it was done by the jury. The Aldermen, deeming it conducive to the public welfare, decide to widen West College Street. They thereupon, in accordance with the charter, direct the Mayor to issue his writ to a policeman directing him to summon a jury and notify all persons "supposed to be affected" by the proposed improvement, thus empowering the Mayor, whose functions are not legislative, to select only *Page 292 
such persons as, in his judgment, he supposes to be affected. None others are to be notified; there is no direction to summon all who have property in the zone of benefits, nor is any such zone designated otherwise than by the names of persons named in the writ. What is there under this proceeding to prevent the Mayor selecting the lots of Mr. Weaver, lying on North Water Street, some two hundred feet from the street to be widened, and omitting the names of those who own lots between West College Street and Mr. Weaver? in which event the jury would have no right or power to assess the benefits accruing to such lots. It is obvious that, under the charter, the Mayor may arbitrarily impose upon such persons as he supposes affected the entire cost of the improvement. It does not appear by the record that the Mayor has omitted any lots which should be assessed. That the power to do so is given, renders the statute open to criticism.
The measure of liability of the entire property benefited is the cost of the improvement; therefore, each property-owner is interested in having each part of the whole assessed, to the end that if the total benefit exceeds the cost, the burden may be properly apportioned. When (373) a taxing district or zone of benefit is fixed in advance of the assessment, this right is secured.
The defendants suggest that before any judgment can be entered against their property, the cost of the improvement should be ascertained. This contention, we think, is sound. The right to levy assessments for special benefits is not based upon the idea that the corporation may collect from property the total amount of such benefits and turn into the treasury the profit made by the improvement. The right which the city has is to collect "the whole or a part of the public improvement from the property benefited." Spencer v. Merchant, supra. This principle is clearly recognized in the charter of the plaintiff of 1891 (ch. 125, sec. 5), wherein the method of equalizing assessments for improving streets is prescribed. The cost is ascertained, and then apportioned between the abutting real estate. The present Chief Justice, discussing this statute inHilliard v. Asheville, 118 N.C. 845, says: "It makes each street, or portion of a street, improved a taxing district by requiring the cost of the total improvement on each street to be ascertained." In that act, for the purpose of paying for the improvement, the "frontage" rule was adopted. This was sustained in Raleigh v. Pace, supra. The only difference between the two statutes, in that respect, is that in the charter of 1901 the benefit is to be ascertained by the jury, instead of the arbitrary "frontage" rule. In all other respects the principle involved is the same. While the question presented here is not raised in Pace's case, supra, it is manifest that the learned Judge did not overlook it. In speaking of the ordinance he says: "It very clearly provides *Page 293 
for a taxing district, to wit: * * * This provision, as to the cost, very plainly implies that the expense of the improvement in the entire district had been previously estimated, and thus we have an apportionment between the abutting owners and the city," etc. The principle is recognized in our legislation providing for (374) building fences around a district by directing the cost of the fence to be ascertained and the cost apportioned among the several tracts of land in the territory within the common fence; also in the drainage laws, Revisal, section 3997, wherein the cost of the work is first ascertained. It is not essential to the validity of a special assessment that the property about the street to be improved. If within the zone of benefits, as fixed by the statute or the commissioners, it may be assessed as if on the street. Nor do we hold that the cost must be ascertained before the assessment is made. This would often be difficult; but before the final apportionment is made and judgment rendered, it is necessary that the cost be ascertained, for this is the limit of the power to impose assessments.
We are, upon careful consideration of the several questions presented by the demurrer and argued before us, of the opinion:
1. That the power to levy assessments, upon lots to which special and peculiar benefits accrue from a public improvement, is conferred upon the plaintiff by chapter 100, sec. 65, Private Laws 1901.
2. That in the exercise of the power of levying special assessments, the Board of Aldermen lay off and define the limits of the district within which they are to be made, and that all property within said district should bear its proportion of the cost upon the basis of special and peculiar benefits, as distinguished from those general benefits which accrue to it in common with all other property in the city.
3. That before a final order or judgment, fixing the amount which is to be paid by the owner, is made, the cost of the improvement be ascertained and apportioned between the several pieces of property.
The record comes to us upon an appeal from a judgment overruling a demurrer; hence, no final judgment appears in the record. The demurrer does not raise any question regarding the amount (375) of benefit assessed, or the principle upon which it was assessed. We find no objection to the statute by reason of the notice required to be given. The demurrer, in so far as it attacks the power of the plaintiff to levy special assessments for special benefits accruing to property by reason of public improvements, was properly overruled. For the reasons herein stated, the judgment rendered by the Board of Aldermen cannot be sustained, and in that respect there was error in the judgment overruling the demurrer.
The only portion of the order made by the Board of Aldermen which *Page 294 
is certified to this Court is that in which judgment is rendered against the defendant appellants. For the reasons given herein the order, as to them, must be set aside and vacated. If so advised, we can see no good reason why the board may not allot and define a taxing district, and proceed to have the benefits to the property within the district assessed in accordance with the provisions of the statute and the principles herein announced. The appellants will recover their costs in this Court.
ERROR.
Cited: Sanderlin v. Luken, 152 N.C. 741; Tarboro v. Staton, 156 N.C. 506,507; Justice v. Asheville, 161 N.C. 72, 74.
(376)