CITY OF KINSTON v. T. C. WOOTEN.

(Filed 17 March, 1909.)

1. Cities and Towns—Paving Streets—Assessments—Notice—Due Process—Constitutional Law.

Chapter 338, Private Laws 1905, providing for an assessment by the town of Kinston upon the lands of abutting owners for the purpose of paving public streets and sidewalks, and for an action in condemnation to enforce collection, gives the owner the right to deny the whole or any part of the amount claimed and plead any defense in the course and practice of the courts that may be available to him in the action prescribed; and hence the absence of notice before the assessment was made and determined upon does not affect the validity of the assessment upon the question of due process.

2. Cities and Towns—Paving Streets—Assessments—Burden and Benefits—Power of Courts—Constitutional Law.

As a general rule, the assessment of adjoining property by a city for the paving of its streets and sidewalks by the front-foot rule will be upheld; but in instances where it is made to appear that in applying this rule to the property of an individual owner there is a marked disproportion between the burden imposed and

any possible benefit, so that it is manifest that the principle of equality had been entirely ignored and gross injustice done, the court may interfere and afford proper relief.

3. Same—Evidence.

In an action to declare an assessment made for the purpose of paving a sidewalk and street upon the front-foot rule a lien on the lots of adjoining owners, and to enforce the lien by the sale of the property, the trial court should hear the evidence offered by the defendant, when pertinent to the inquiry.

4. Cities and Towns—Assessments—Paving Streets—Burdens and Benefits.

Under the facts and circumstances of this case, an assessment of $447 on a lot valued at $1,500 held not to present such a case of imposition as would authorize the court to interfere and arrest its collection.

ACTION tried before *Neal, J.,* and a jury, at March Term, 1908, of LENOIR.

The action was brought by the plaintiff against the defendant for the purpose of having a lien declared against the lands of the defendant, situated on Queen Street, in the city of Kinston, N. C., and referred to in the complaint, and for the purpose of having the same condemned to be sold to pay the assessment made against said land by the board of aldermen of the city of Kinston, for the proportionate part of the cost of paving the roadway and sidewalk of Queen Street, in said city, as authorized by chapter 338, Private Laws 1905, and by the ordinances, "A," "B," "C" and "D," enacted by said board of aldermen pursuant to said act, which ordinances are attached to and made a part of the complaint.

It was agreed that under and by authority of said private act the said board of aldermen resolved to pave and did pave that portion of Queen Street lying and being between the Atlantic and North Carolina Railroad, where it crosses said Queen Street, and Bright Street, the length of said street thus paved being 2,329.2 lineal feet; that the defendant owns a lot of land on said portion of said Queen Street with a frontage abutting thereon of 110 lineal feet; that the entire cost of paving the roadway of said portion of Queen Street, hereafter referred to as the taxing district, was $30 (254.31), and that the cost per lineal foot was $12.98, and one-sixth of the cost per lineal foot was $2.16⅓,

KINSTON v. WOOTEN.

and that one-sixth of the entire cost of paving that portion of said Queen Street on which said lot of land abuts was $237.97. It was further agreed that the taxing district contained 8,121.41 square yards of sidewalk paving, and that the said pavement cost $11,015.50, and each square yard of pavement cost $1.429, and two-thirds of the cost of each square yard of pavement is 95¼ cents; that there are 220.37 square yards of sidewalk pavement on which said lot of land abuts, and two-thirds of the cost of paving that part of the said sidewalk on which said lot abuts is $209.90. It was further agreed that the said board of ·aldermen did not give the defendant notice of the making of said assessment until after it was made, and the defendant had no opportunity of being heard until the assessment was made, and then notice, both of the assessment and the time when the same would become due, was caused to be served upon the defendant, who refused to pay the same. The defendant moved to nonsuit the plaintiff, for the reason that the assessment was made without giving the defendant an opportunity to be heard, which was the taking of property without due process of law. Motion ·denied. Defendant excepts. Exception 1.

The defendant testified as follows: That the said lot was situated on the corner of Queen and Bright streets, one block south of the courthouse, and was at the terminus of the taxing district; that on the opposite western corner Dr. John A. Pollock resided, and that Miss Tiffany West owned a residence on the southwestern corner and resided therein; that the southern corner was occupied by negroes, and that the buildings were unsightly; that the lot was narrow, as a part of the original lot had been cut off and a residence fronting on Bright Street had been erected thereon; that the lot assessed is situated in the part of the city where the property is of less value than any other on that part of the street improved. It was valued at $1,000. The assessment is one-fourth of what the property cost. The property above the courthouse is valued ten times more, according to frontage, than the lot in question. It is unimproved and does not bear any revenue at all. It is 110 feet long on Queen Street and 35 feet deep, and is the terminus of the improvement.

The following issues were submitted by the court to the jury:

1. "Is the defendant's lot so situated and located that any assessment charged against it should not be measured by the frontage rule?

2. "What amount, if any, is the plaintiff entitled to have charged and assessed as a lien against the property of the defendant described in the complaint?" Answer: "Four hundred and forty-seven dollars and forty-six cents."

The court held that no evidence had been submitted that was sufficient to change the frontage rule in this case, and charged the jury that if they believed all the evidence they should answer the second issue "Four hundred and forty-seven dollars and forty-six cents," and this issue was so answered. The court rendered the judgment on the verdict, declaring the amount assessed a lien on the lot in question, and directing a sale pursuant to the statute, and defendant excepted and appealed.

*Y. T. Ormond* for plaintiff.
Defendant not represented.

HOKE, J., after stating the facts: The statute under which the assessment was made and this action instituted provides that the assessment shall be recovered by action, and that in any action to recover the same the owner of the property shall have the right to deny the whole or any part of the amount claimed to be due by the city, and to plead any irregularity in reference to the assessment or any fact relied upon to question the legality of the assessment; and the issues raised shall be tried and the cause disposed of according to law and the course and practice of the court. And in *Kinston v. Loftin,* 149 N. C., 255, the Court held that this provision complied with every proper requirement as to notice, and offered a defendant opportunity to assert and maintain every defense to which he might be justly entitled. The defendant's objection for lack of notice, therefore, cannot be sustained. Again, in *Loftin's case, supra,* reference was made to the decisions of *Raleigh v. Peace,* 110 N. C., 32, and *Hilliard v. Asheville,* 118 N. C., 845, as establishing the validity of these special assessments as a general proposition, and what is known as the front-foot rule as an approved method of apportioning the same among the owners of the property affected.

In these cases, however, while the right to make assessments of this character is recognized and is referred in a general way to the sovereign power of taxation, they are also declared to be so far peculiar that they can only be upheld on the theory of special benefits conferred, and which bear some reasonable relation to the burdens imposed; the front-foot rule being accepted as a legislative declaration that this shall be considered, and is a fair and reasonable method of making the assessment and establishing an approximate equality in the distribution of the burdens. From this it would seem to follow that the right of imposing such burdens, unlike the power of general taxation, is not unlimited and without restraint, but may be in certain cases subjected to judicial scrutiny and control. Accordingly, in *Raleigh v. Peace, supra, Shepherd, J.,* delivering the opinion, quotes with approval from *Shuford v. Commissioners,* 85 N. C., 8, and further says: "*Ruffin, J.,* in *Shuford v. Commissioners, supra,* says that such assessments 'are committed to the unrestrained discretion of the lawmaking power of the State, only, as I take it, that the burden imposed on each citizen's property must be in proportion to the advantages it may derive therefrom.' The latter part of the sentence very clearly implies the power of the courts to interfere to some extent, and in this we very heartily concur; but it is not essential in this case that we should define and mark the limits of this power, and it is sufficient to say that, according to all of the authorities, the Legislature or its duly authorized instrumentalities are, primarily at least, the judges in respect to the particulars mentioned, and that their decision will not be disturbed unless it clearly appears that there is an absence of power or that the particular method prescribed for the assessment of the peculiar benefits to the abutting property is so plainly inequitable as to offend some constitutional principle."

This intimation of the right of the court to interfere, under certain circumstances, for the protection of the property owner has been sanctioned and approved by the United States Supreme Court in the case of *Norwood v. Baker,* 172 U. S., 269, in which it was held: "(1) The principle underlying special assessments upon private property to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore that the owners do not in fact pay any-

thing in excess of what they receive by reason of such improvement. (2) The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation; but unless such excess of cost over special benefits be of a material character it ought not to be regarded by a court of equity, when its aid is invoked to restrain the enforcement of a special assessment."

And while this case has been explained and modified by subsequent decisions of the same Court, notably in *French v. Paving Co.,* 181 U. S., 324, and other cases in this and later volumes, the principle remains and may be taken as established that, although the systems provided in the different States will be upheld and usually recognized as conclusive, in so far as they establish general rules for imposing these assessments, yet, in applying these rules or any given method to the property of an individual owner, if it should be made to appear that there is such marked disproportion between the burden imposed and any possible benefit as to make it clearly manifest that the principle of equality had been entirely ignored and gross injustice done; in such case the court may interfere and afford proper relief. On a question dependent so largely on the varying facts and circumstances of the different cases the courts have not undertaken to define with more precision the limit by which their right to interfere shall be ascertained and determined, and could not well do so; but the doctrine thus stated in general terms will find support in many decided cases and text writers of approved merit. *Norwood v. Baker, supra; French v. Paving Co., supra; Pipe and Tile Co. v. Cullahan,* 125 Iowa, 358; 3 Am. and Eng. Anno. Cases, 7; *Preston v. Judd,* 84 Ky., 150; *Atlanta v. Hamlein,* 96 Ga., 381; *Everett v. Bayonne,* 63 N. J. L., 202; *State v. Passaic,* 37 N. J. L., 65; *Weed v. Boston,* 172 Mass., 28; *Washington Avenue,* 69 Pa. St., 352; *White v. Tacoma,* 109 Fed., 32; Judson on Taxation, sec. 355 *et seq.,* secs. 359-388; Smith's Modern Law, Municipal Corporations, sec. 1267; Hamilton on Special Assessments.

In *Preston v. Judd, supra,* the Court held: "In assessing property to pay for street improvements, the municipality hav-

ing decided that the assessed area or tax district as an entirety will be benefited by the contemplated improvements, a lot owner may be compelled to pay his proportion of the cost of the improvement unless the absence of benefit and of public need of the improvement make it manifest that the burden amounts to spoliation and not legitimate taxation, in which event the burden cannot be imposed."

In *Atlanta v. Hamlein, supra,* it was held: "Ordinarily, the question of benefit, whether general or special, is concluded by a distinct legislative declaration specifically authorizing the improvement; but where by its charter a municipal corporation is authorized generally to pave the public streets and charge against the abutting landowners· proportionate shares of the cost of such improvement, estimated upon the front-foot rule, if in the assessment for a given improvement there be such a gross disproportion between the sum assessed against a particular lot owner and the value of his abutting lot as that if the municipal corporation be permitted to proceed with its collection such action would amount to a virtual confiscation of the landowner's property, the assessment cannot be upheld as a valid exercise of the power conferred, and a court of equity will enjoin the collection of the sum so assessed."

And in Judson on Taxation, sec. 359, it is said: "The legislative discretion, therefore, in apportioning the cost of public improvements, while broad and comprehensive, is not unlimited, but is subject to judicial review and scrutiny in determining whether property charged with such cost is taxed in accord with the fundamental canons of taxation and thus under 'due process of law.' "

And, again, in section 388, this author, after careful review of the recent decisions of the Supreme Court on the question, said: "It is clearly established by these decisions of the Supreme Court that the legislative power, broad and comprehensive as it is in taxation, is not unlimited and is not beyond the reach of judicial review and scrutiny. The rule thus laid down in the case of special assessments is substantially the same which has been declared in regard to the requirement of a public purpose in general taxation or in the enforcement of limitations upon the legislative power of classification. These are primarily legislative

questions, and the courts, especially the Federal courts, will only in extreme cases review the exercise of that discretion. Thus it is primarily for the Legislature to determine whether a tax is levied for a public purpose. But, as was seen in the preceding chapter, cases are not wanting in which such legislative declaration or finding had been overruled by the courts. It is primarily a legislative function to determine what is a reasonable classification for taxation, but this determination is subject to judicial review."

It will thus be seen that, while the right of the court to interfere for the protection of the individual owner of property is recognized, its exercise can only be justified and upheld in rare and extreme cases, when it is manifest that otherwise palpable injustice will be done and the owner's rights clearly violated. This limitation arises of necessity in this scheme of taxation, for in its practical application it would well-nigh arrest all imposition of these burdens if each individual owner of property were allowed to interfere and stay the action of the officials on any other principle. And on the facts presented we are of opinion that no error has been committed to defendant's prejudice in the disposition of the case. Under the doctrine established by the authorities cited, and by the express provisions of the statute, the court did right to hear the evidence offered by defendant (see, further, *Indianapolis v. Holt,* 155 Ind., 222, 235); and we think he correctly ruled, also, that, taking all the testimony as true, it did not establish or tend to establish defendant's right to relief from the assessment imposed upon his property. While the lot in question is described as being only 35 feet in depth, and is estimated to be worth not more than $1,500, the evidence further shows that it is situated on the principal street of a thriving, prosperous town, within one block of the courthouse and well within the benefits of the improvement, and it also tends to show that this depth of 35 feet has been caused by cutting off a portion of the lot for a private residence, and that the full depth of the lot affected by the improvement is much greater than the thirty-five feet.

We are of opinion, as stated, that the testimony entirely fails to bring the defendant's case within the principle he seeks to invoke, and that the judgment against him must be affirmed.

No Error.