THE TOWN OF TARBORO v. H. L. STATON.

(Filed 9 November, 1911.)

1. Cities and Towns—Street Improvements—Abutting Owners—Assessments—Notice—Front-foot Rule.

The proper authorities of a town, acting under legislative powers conferred, may pass a valid and enforcible ordinance requiring the owners of property abutting upon a street to curb and gutter the portion of the street in front of their property according to certain stated specifications, the one-half of the cost to be borne by the town and the other half by the owners of abutting property according to frontage, with provision that on failure of the owners to make these improvements within thirty days after due notice given, the work shall be done by the town authorities and the proportionate part of the cost thereof assessed against the property of the adjoining owners in the manner stated.

2. Same—Legislative Powers—Governmental Functions—Equality—Power of Courts.

While these assessments are upheld on the theory of special benefits conferred, and which bear some reasonable relation to the burdens imposed, authority to make them is referred to the sovereign power of taxation, which is primarily and as a rule exclusively a legislative power; and where the Legislature, or a municipal government exercising legislative power expressly conferred for the purpose, has provided for a local improvement of this character, its action is conclusive as to the necessity for the improvement; and in establishing general rules, by any of the recognized methods, imposing special assessments for its construction and maintenance and in applying these rules or methods to the property of an individual owner, the courts are permitted to interfere only in rare and extreme cases, in which it is clearly manifest that the principle of equality has been entirely ignored and gross injustice done.

3. Same—Resulting Benefits—Equalization—Constitutional Law.

Where a municipal ordinance of the kind indicated directed the construction of a curb and gutter along a public street, one-half of the cost to be borne by the town and the other half by the abutting property-owners, to be assessed according to the front-foot rule, an assessment according to the rule established of $63.12 against plaintiff's property having a frontage of 252½ feet is not so unreasonable or oppressive as to justify the inter-

ference of the court, and the position is not affected by the fact that the commissioners in making the assessment did not, in the particular instance, take into consideration the question of special benefits to the owner's lot.

4. Cities and Towns—Street Improvement—Abutting Owners—Assessment—Notice.

The provision of a statute affording an abutting owner on a street ample opportunity to appear and question the amount or validity of an assessment made on his property for street improvement there, is valid. *Kinston v. Loftin,* 149 N. C., 255, cited and approved.

WALKER, J., dissenting.

APPEAL from *Whedbee, J.,* at June Term, 1911, of EDGECOMBE.

Civil action to enforce a lien for special assessments.

It appeared that the municipal authorities of Tarboro, acting under power expressly conferred by the Legislature, had passed an ordinance requiring the owners of property abutting on that part of Main Street from Church Street to Howard Avenue to curb and gutter the portion of the street in front of their property according to certain stated specifications, the one-half of the cost to be borne by the town and the other half by the owners of abutting property according to frontage, and providing further, if any abutting owners should fail to make said improvement within thirty days after due notice given, the proper officers of the town should have same done, and that one-half costs thereof should be assessed against said propertyowners at so much per front foot, etc. That defendant, after notice duly given, had failed and refused to comply with the terms of the ordinance. The work was done by the authorities, the cost thereof requiring an assessment of 50 cents per front foot, and showing plaintiff's portion to be $63.12.

The act in question declares the amounts properly assessed to be a lien on respective lots enforcible by action in the Superior Courts, and contains the provision: "And in his answer to the action so instituted the owner shall have the right to deny the whole or any part of the amount claimed to be due by the town, and to plead any irregularity in reference to the assess-

ment, and the issue raised shall be tried and the cause in other respects disposed of according to law and the practice of the court."

Defendant resists recovery chiefly on the ground (1) that the property of defendant in fact received no special benefit by reason of the alleged improvement; (2) that such special benefits were in no wise considered by the authorities when the assessment was ordered or made; and, having made answer to this effect, tendered issues presenting his position, and same were declined.

On issues submitted by the court, the jury rendered the following verdict:

1. Did the commissioners of Tarboro in making the assessment take in consideration the special benefits the property assessed received in addition to the benefits received by the community at large? Answer: No.

2. Was the work done according to the requirement of the notice served on the property-owner? Answer: Yes.

3. Is the defendant's lot so situated and located that any assessment charged against it should not be measured by the frontage rule? Answer: No.

4. What amount, if any, is the plaintiff entitled to have charged and assessed as a lien against the property of the defendant described in the complaint? Answer: $63.12, which is admitted to be one-half of the actual reasonable cost of the curbing and gutter.

Judgment on the verdict, and defendant excepted and appealed, assigning for error the refusal to present or consider the questions embodied in his issues.

*W. O. Howard* for *plaintiff.*
*G. M. T. Fountain and Marshall C. Staton* for *defendant.*

HOKE, J., after stating the case: The right to impose burdens of this kind and the method of assessment by the front-foot rule, in cases like the present, have been upheld in several decisions of our Court, as in *Kinston v. Wooten,* 150 N. C., 295; *Kinston v. Loftin,* 149 N. C., 255; *Asheville v. Trust Co.,* 143 N. C., 360; *Hilliard v. Asheville,* 118 N. C., 845; *Raleigh*

*v. Peace,* 110 N. C., 32. While it is said in these and other cases that assessments of this character can only be upheld on the "theory of special benefit conferred and which bear some reasonable relation to the burdens imposed," the right to make them as a general proposition is referred to the sovereign power of taxation, which is primarily, and as a rule exclusively, a legislative power. And it is held with us, and the ruling is, we think, in accord with the great weight of authority, that in reference to a local improvement, governmental in its nature, the action of the Legislature, or of local authorities exercising legislative power expressly conferred for the purpose, is conclusive as to the necessity for a given improvement and in establishing general rules, by any of the recognized methods, imposing special assessments for its construction and maintenance. And in applying these rules or methods to the property of an individual owner and on the question of amount, the legislative declaration shall so far prevail that it is only in rare and extreme cases that the courts are allowed to interfere. Speaking to this question in *Raleigh v. Peace, supra,* the Court held: "The power to levy such assessments is derived solely from the Legislature, acting either directly or through its local instrumentalities, and the courts will not interfere with the exercise of the discretion vested in the Legislature as to the necessity for or the manner of making such assessments, unless there is a want of power or the method adopted for the assessment of the benefits is so clearly inequitable as to offend some constitutional principle." And in *Asheville v. Trust Co.,* 143 N. C., 360, it was said: "It has been repeatedly decided that the legislative act of assigning districts for special taxation on the basis of benefits cannot be attacked on the ground of error in judgment regarding the special benefits and defeated by satisfying a court that no special and peculiar benefits are received. If the Legislature has fixed the district and laid the tax for the reason that, in the opinion of the legislative body, such district is peculiarly benefited, its action must in general be deemed conclusive." Again, in *Kinston v. Wooten, supra,* it was held: "As a general rule, the assessment of adjoining property by a city for the paving

of its streets and sidewalks by the front-foot rule will be upheld; but in instances where it is made to appear that in applying this rule to the property of an individual owner there is a marked disproportion between the burden imposed and any possible benefit, so that it is manifest that the principle of equality had been entirely ignored and gross injustice done, the court may interfere and afford proper relief."

In this case the Court further said: "It will thus be seen that, while the right of the court to interfere for the protection of the individual owner of property is recognized, its exercise can only be justified and upheld in rare and extreme cases, when it is manifest that otherwise palpable injustice will be done and the owner's rights clearly violated. This limitation arises of necessity in this scheme of taxation, for in its practical application it would well-nigh arrest all imposition of these burdens if each individual owner of property were allowed to interfere and stay the action of the officials on any other principle." The opinion then refers with approval to the case of *Atlanta v. Hamlein*, 96 Ga., 383, and in which *Atkinson, J.,* said: "As a general proposition, upon the question of benefit, whether general or special, the owner is concluded by an expression of the legislative will. Where power is conferred upon the municipal authorities, in their discretion, to inaugurate a system of street improvements, with the power likewise conferred of imposing upon the abutting lot owners a proportionate share of the cost of such improvements, such power may be well exercised by the city authorities without giving notice of any character to the lot owner; and it is inconsistent with the proper exercise of the taxing power, and would tend to a manifest embarrassment of the public in the prosecution of these public improvements, if, upon every assessment, the lot owner were entitled to have the question judicially determined whether or not he would be benefited by the proposed improvement. As to whether he was benefited or not is a question which should address itself to the discretion of the municipal authorities. Their judgment upon this subject is ordinarily, except in the most extreme cases, conclusive; but, as we have before stated, it is not allowable that the

municipal authorities, under the guise of a public improvement, should arbitrarily deprive the citizen of his estate. If, therefore, in the levy of such assessments, the cost of the improvement be so disproportionated to the value of the estate sought to be improved as that the levy of the assessment amounts to a virtual confiscation of the lot owner's property, such assessment cannot be upheld as a legal or valid exercise of the power to tax for such improvements."

These decisions are sustained, we think, as stated, by the weight of well-considered authority. The case of *Norwood v. Baker,* 172 U. S., 269, as interpreted and applied by subsequent decisions of the same high Court not being in direct or necessary antagonism to the view presented, see *French v. Asphalt Paving Co.,* 181 U. S., 324; *Wright v. Davidson,* 181 U. S., 371; *Tonawanda v. Lyon,* 181 U. S., 371; *Atlanta v. Hamlein, supra; Preston v. Rudd,* 84 Ky., 150; *Wheeler v. District Court,* 80 Minn., 293; Elliott on Roads and Streets (3 Ed.), sec. 685; Hamilton on Law of Special Assessments, sec. 181; Judson on Taxation, sec. 359.

This, then, being the correct principle, the position contended for by defendant can in no wise be sustained. The statute confers ample authority. The front-foot rule has been adopted and declared a correct and proper method and the amount assessed against defendant, $63.12 for a frontage of 252½ feet, would seem to be reasonable, just, and moderate. Certainly there is nothing in the record or in the evidence which shows or tends to show facts which would authorize the Court to interfere or stay collection of the amount charged.

On the question of notice, the provision of the law, affording defendants an opportunity to appear and question the amount or validity of an assessment, has been approved and held sufficient in a statute of similar import in *Kinston v. Wooten* and *Kinston v. Loftin, supra,* the doctrine being stated in *Loftin's case* as follows: "A statute authorizing such an assessment which provides for a notice that will enable the property owner to appear before some authorized tribunal and contest the validity and fairness of the assessment before it becomes a fixed

charge on his property is not open to the objection that it deprives the owner of his property without due process of law."

There is no error, and the judgment below must be affirmed.

No. error.

WALKER, J., dissenting: This is a very important case, and the principle, which is said in the opinion of the Court· to control it, is far-reaching in its necessary consequences. It is held, substantially, that the State, either directly by legislative enactment, or indirectly by acting through some local municipal body, may practically take the citizen's property for a public use without just compensation, if that use consists in improving the streets and sidewalks of a village, town, or city. I do not, for a moment, controvert the position that abutting property in a town may be assessed to pay the expenses of improvements, when it is especially benefited thereby; but there is no more power or right to make the owner of abutting property pay for improvements of streets or sidewalks, where there is no benefit to him, than there is to tax him for the general public benefit, when there is no return to him in the way of protection to himself or his property, or to take his property by condemnation or otherwise, without just compensation. One is as much confiscation as the other. The Legislature may provide for the determination of the question of benefit to any particular property, and, perhaps, under the authorities, the decision of the tribunal so authorized to consider and decide whether there is a special benefit and how much it is, and to provide whether it shall be paid for by the front-foot rule or by establishing districts for the assessment of such benefits, may not be reviewed; but that is a very different question from the one presented in this case, where the defendant's property is made to pay tribute to the public, regardless of benefit to his property and without even providing any method for deciding whether his property has received a special benefit or not. Under the charter of the plaintiff, the owner is required to pave, curb, or otherwise improve the sidewalk in front of his lot, and to pave or improve one-fourth of the street, without reference to benefits of any kind, and upon his failure to do so

the town commissioners are authorized to have the work done, and "the cost thereof shall be borne by the owner or owners of such lot and shall constitute a lien to the same extent that municipal taxes assessed against the same are a lien thereon." This is not in accordance with our Constitution, the Constitution of the United States, or the principles of natural justice and right, as declared by one of our greatest jurists, *Chief Justice Ruffin,* in *Davis v. R. R.,* 19 N. C. (Battle's Ed.), marg. p. 451, where it is said: "The principle (of compensation) is, however, so salutary to the citizen, and concerns so nearly the character of the State, that it may well be urged that it must be consecrated by its adoption in some part of the free Constitution of this State. We should be reluctant to pronounce judicially our inability to find it in that instrument. If it be not incorporated therein, the omission must be attributed to the belief of the founders of the Government that the Legislature would never perpetrate so flagrant an act of gross oppression, or that it would not be tolerated by the people, but be redressed by the next representatives chosen. There is no doubt that, while the Legislature and people of this State expressly restricted the action of the General Government on this subject, it must have been supposed by the people that their own local government was in like manner restrained, or would never act in a manner to make such a restraint necessary. There is, however, no clause in that instrument which seems to bear on the point, unless it be that which is relied on in the argument for the defendant. It is the 12th section of the Bill of Rights, which declares, 'that no freeman shall be disseized of his freehold, or deprived of his life, liberty, or property, but by the law of the land.' Under the guaranty of this article, it has been held, and in our opinion properly held, that private property is protected from the power of despotic resumption, upon a legislative declaration of forfeiture, or merely to deprive the owner of it, or to enrich the treasury, unless as a pecuniary contribution by way of tax. Such acts have no foundation in any of the reasons on which depends the power, in virtue of the right of eminent domain, to take private property for the public use, and they could not be sustained by the offer of the fullest

compensation. Though not so obvious, it may also be true that the clause under consideration is restrictive of the right of the public to the use of private property, and impliedly forbids it, without compensation." This fair and equitable principle has been so uniformly adopted in subsequent decisions of this Court, following the precedent thus established by *Davis v. R. R.*, that no one now attempts to gainsay that, under our system of State government, a man's property cannot be taken directly or indirectly, nor can he be deprived of the use of the emoluments thereof, without just compensation for the loss to him. Where is the difference between compelling him to pay the amount of an assessment levied upon his lot and which constitutes a lien thereon until paid, and to pay which it may be sold and thereby deprive him of it, and taking directly by condemnation for a public use? None at all, except in form. In the one case you make him give up his money to save his land—and money is itself property—and in the other you take the land itself without the right of redemption by paying the money. With all due deference to my brethren, who have overruled my opinion, I take leave to say that there is no *decision* to be found in the books and no authority elsewhere, that holds the arbitrary provision of this charter and the proceedings taken in pursuance thereof to be valid. It is far better that ambitious villages, towns and cities should not grow so rapidly, than that the sacred rights of the citizen should be destroyed or even impaired.

A similar idea was advanced by *Judge Bynum* in *French v. Commissioners*, 74 N. C., 692, in speaking of our dealing with the property and rights of others, with special reference to the power of taxation. "The other and better way, however," he said, "is to reduce *the expenditures*. The old proverb, 'Cut the garment according to the cloth,' has in it much practical wisdom. It is illustrated every day in private life, and is the foundation of individual integrity, contentment, and success. In every relation of wholesome life men adapt their wants and expenditures to their income. No good reason can exist why the same obligation does not rest upon corporations and is not equally as practicable. Instead of which, as things now go,

those who are intrusted with other people's money and prop-
erty, whether States or counties, instead of practicing prudence
and economy in the discharge of their trust, seem emulous of
each other in extravagance. The end of such a course is easily
seen, and must be one of disaster."

It is much better not to progress so rapidly than to make
the citizen pay tribute to the public, for which he receives no
corresponding benefit, apart from that enjoyed by other mem-
bers of the community.

Judge Dillon said: "Special benefits to the property
assessed, that is, benefits received by it in addition to those
received by the community at large, is the true and only just
foundation upon which local assessments can rest; and to the
extent of special benefits it is everywhere admitted that the
Legislature may authorize local taxes or assessments to be
made." 2 Dillon on Mun. Corp., 933 (3).

I will refer to one case decided by this Court, and then pass
to a general consideration of the other authorities cited in
the opinion, and to what is said upon the subject by the text-
writers. In *Kinston v. Wooten,* 150 N. C., 300, referring to
*Norwood v. Baker,* 172 U. S., 269, and *French v. Paving Co.,*
181 U. S., 324, which is erroneously supposed to have modified
it, it is said that "the system provided in the different States
will usually be recognized by the Federal courts as conclusive,
in so far as they establish general rules for making assessments;
yet if, in applying these rules, or any given method, to the
property of an individual, it should appear that there is a
marked disproportion between the burden imposed upon the lot
owner and any possible benefit his property may derive from
the improvement, so that it will manifestly appear that the
presumption of equality had been entirely ignored and gross
injusice done, the court will interfere and grant relief." What
greater inequality can there be between a burden imposed and
no benefit at all in return? If, as said in that case, the courts
will intervene and enjoin the assessment if the burden is great
and the benefit small, what will the court do when there is *all*
burden and no benefit, as in this case? for as the jury have

found that benefits were not considered at all, we must assume
there are none, for there are none shown to exist by the.
decision of a judicial tribunal or even of an arbitrary one.
And then again, the charter gives to the commissioners, who
may be a municipal oligarchy, the unlimited and arbitrary
power to assess a citizen out of his property without the slight-
est regard to his benefits or the right of compensation for prop-
erty forcibly taken from him for the benefit of the public.
This despotic power resides in the board of commissioners, to
be exercised at their will, and they may simply declare, in the
exercise of it, that the abutting owner shall pay all the costs
of the improvement.    Remember that I have fully conceded
the right of the Legislature, by itself or through a local munici-
pal body, to prescribe the manner in which the benefit may be
ascertained, and to levy or apportion the assessment according
to some rule, by district, front foot, superficial area, or value,
or otherwise, so that there is not such manifest disproportion
between burden and benefit as to work oppression or shock our
sense of justice.    But how can we adjudge that there is such
a disproportion unless we have, at least, some tangible idea of
what the benefit is, so that we may compare it with the burden?
Proportion must exist between two or more well-known things—
something that can be seen or understood.    It cannot be predi-
cated of something that is not known as between it and some-
thing that is known.    All burden and no benefit does not sug-
gest the idea of proportion, and that is the nonproportion
which this charter, and the ordinances adopted in pursuance
of it, have established.    Recent text-writers on this subject,
who have reviewed all the decisions rendered up to the time
their treatises were published, have thus stated the conclusion
reached by them, after examining all the authorities, many of
which are cited in the notes to the section we quote, which is
as follows:

"In order to justify a local assessment, the improvement
must not only be public in its nature, but it must confer an
especial and local benefit upon the property which is so assessed
therefor.    If the improvement confers an especial local benefit,
it is no objection to an assessment therefor that it is con-

structed so as to benefit the public as much as possible and to injure it as little as possible. Improvements of this sort must 'have a double aspect of general public benefit and also of peculiar local benefit.' The attempt to state in general terms what constitutes a local special benefit has often been made. 'Benefits are special when they increase the value of the land, relieve it from a burden, or make it especially adapted to a purpose which enhances its value.' 'Whatever gives an additional value to the particular parcel of land is a special and not a general benefit, and it may be a special benefit though not an immediate one.' Without such local benefit the improvement may be public in character, so that the expense thereof may be borne by general taxation; but a local assessment, based upon the theory of benefits, cannot be levied therefor." Jones and Page on Taxation by Assessments, sec. 284.

*Norwood v. Baker,* 172 U. S., 269 (43 L. Ed., 443), is directly opposed to the decision in this case. It was there held that an assessment upon abutting property by the front foot, without taking special benefits into account, for the entire cost and expense of opening a street, including not only the amount to be paid for the land, but the cost and expense of the proceedings, is a taking of private property for public use without compensation.

It is said, though, that the *Norwood case* has been reconsidered since by that Court and so qualified, modified, and explained that there is little or nothing, as an authority, left of it. I do not agree to this criticism of the case or to the effect of later decisions upon it as an authority. It has been distinguished in some cases, but not overruled, and its authority as a precedent, when more recent cases reviewing it are rightly considered, has not even been impaired, at least, so far as the question involved in this case is concerned.

It is supposed that the case of *French v. Barber Asphalt Paving Co.,* 181 U. S., 324, and the other cases cited in the opinion from that volume of the reports of the same Court, have so modified the decision in *Norwood's case* as to diminish if not destroy its weight as an authority. I do not think so. The reasoning in those cases is devoted largely to a considera-

tion of the manner of apportioning the assessment, whether
"in proportion to frontage, the area, or the market value of the
land, or in proportion to the benefits as estimated by commis-
sioners," without any reference to the other methods. But
there will be seen running through all of the discussions in
these cases that there must be some determination that the prop-
erty is benefited, and then the Legislature may decide, in its
discretion, how the assessment may be apportioned. This will
appear by the extract I have just taken from *Wright v. David-
son,* 181 U. S., at p. 379 (cited in the opinion of the Court),
and this expression of the Court in that case: "The class of
lands to be assessed for the purpose may be either determined
by the Legislature itself, by defining a territorial district, or
by other designation; or it may be left by the Legislature to
the determination of commissioners, and be made to consist of
such lands, and such only, as the commissioners shall decide to
be benefited." The Legislature may decide that certain lands
within a given or prescribed area will be benefited by an
improvement, and form a taxing district for the purpose of
apportioning the assessment. It is not the method of appor-
tionment that I am criticising, but the taking of a citizen's prop-
erty, not only without just compensation, but without any com-
pensation; and you may as well take his land specifically as his
money. There is no difference, as far as he is concerned. In
*French v. Barber Asphalt Co., supra,* the Court, in attempting
to show that *Norwood's case* does not conflict with the decision
in that case, says that the decree in the *Norwood case* did
enjoin the making and collecting of the special assessment, as
being equivalent to confiscation or a taking of property for a
public use, without just compensation and, therefore, without
due process of law in violation of the fourteenth amendment;
but it further says that it left the village of Norwood free "to
make a new assessment upon the plaintiff's abutting property
for so much of the expense of the opening of the street as
was found, upon due and proper inquiry, to be equal to the
special benefits accruing to the property"; the matter being
left, with this limitation, under the control of the local author-
ities.

In *Williams v. Eggleston,* 170 U. S., 304, it was said by the
Court upon this very question: "Neither can it be doubted
that, if the State Constitution does not prohibit, the Legislature,
speaking generally, may create a new taxing district, determine
what territory shall belong to such district and what property
shall be considered as benefited by a proposed improvement.
But the power of the Legislature in these matters is not unlim-
ited.   There is a point beyond which the legislative department,
even when exerting the power of taxation, may not go consist-
ently with the citizen's right of property.   As already indi-
cated, the principle underlying special assessments to meet the
cost of public improvements is that the property upon which
they are imposed is peculiarly benefited, and therefore the
owners do not, in fact, pay anything in excess of what they
receive by reason of such improvement.   But the guaranties for
the protection of private property would be seriously impaired
if it were established as a rule of constitutional law that the
imposition by the Legislature upon particular private property
of the entire cost of a public improvement, irrespective of any
peculiar benefits accruing to the owner from such improvement,
could not be questioned by him in the courts of the country."
In *Norwood v. Baker* the Court thus expressed itself: "Un-
doubtedly, abutting owners may be subjected to *special assess-
ments to meet the expenses of opening public highways in
front of their property,* such assessments, according to well-
established principles, resting upon the ground *that special bur-
dens may be imposed for special or peculiar benefits* accruing
from public improvements. *Moblie County v. Kimball,* 102
U. S., 961, 703, 704; *R. R. v. Decatur,* 147 U. S., 190, 202;
*Bauman v. Ross,* 167 U. S., 548, 589, and authorities there
cited.   And according to the weight of judicial authority, the
Legislature has a large discretion in defining the territory
to be deemed specially benefited by a public improvement, and
which may be subjected to special assessment to meet the cost
of such improvement."   But while this is true, it has not the
power itself, nor can it be conferred upon municipal boards, to
arbitrarily take the property of the citizen without any refer-
ence to benefits to be received by him from the public improve-

ment. In *Raleigh v. Peace,* 110 N. C., at p. 38, *Justice Shepherd* said: . "It is, therefore, preëminently just, as well as the duty of the lawmaking power, to provide for an equitable adjustment of such burdens in proportion to the benefits conferred." *Ruffin, J.,* says in *Shuford v. Commissioners,* 86 N. C., 552: "(Such measures) are committed to the unrestrained discretion of the lawmaking power of the State, only, as I take it, that the burden imposed on each citizen's property must be in proportion to the advantages it may derive therefrom."

It is well not to vest too much authority in local tribunals, in the matter of taking or assessing private property. It is liable to great abuse and often tends to oppression. Unlimited discretion is dangerous, and no man's property or rights should be held subject to the mere will or caprice of another. This is a government in which responsibility of the public official to the people is of the first importance. Power, it has been said, is always, though gradually, stealing from the many to the few; and recently this tendency has been somewhat increased and accelerated. This arbitrary element in government should be eliminated to the extent that such a course is consistent with the due and proper administration of public affairs and the welfare of the people. The citizen should be made to feel that he holds and enjoys his property under the protection of the law, and not at the mere pleasure of one who may prove to be a petty despot, and who is not bound by any law or any restraint save his own will. This particular assessment may be just and right, and the real facts, if disclosed, might show that the defendant is only required to pay for the special benefit he will receive, which is the compensation for the loss of his money, but there is no provision of law for ascertaining the facts, and the case must be considered as if it had been found that his property will not be benefited at all. I adhere to the rule established in the *Norwood case,* that the exaction from the owner of private property of the cost incurred in making a public improvement, or in substantial excess of the special benefits accruing to him, is, in either case, a taking of his property under the guise of taxation, without compensation,

and when there is no provision for compensation at all, it is confiscation. All systems or schemes of taxation are based upon the idea of benefit to those who must bear their share of the public burden, and can be justified upon no other principle, and assessments for local improvements are conceded by the authorities to be an .exercise of the taxing power. My conclusion is that the assessment in this case was laid upon an arbitrary principle, there being a total failure to exercise the judgment of the Legislature or the board in determining the actual benefit, or as to whether there was any benefit, and, therefore, the assessment is void. The amount involved should make no difference in the application of the fundamental principle of justice and the Bill of Rights (Article I, sec. 17), and if anything, we should guard most zealously against wrong to and oppression of those who are the least able to resist the encroachments and aggression of a despotic power, not that the weak and humble have any greater legal rights than those more fortunate, but for the reason that they are more exposed to the danger of a wrong use of absolute power and less able to defend themselves against it. When enforcing the claims of the public, we should be careful not to overlook the natural and constitutional rights of the citizen, which should not be sacrificed even to promote the public welfare.