## W. T. JUSTICE ET AL. v. CITY OF ASHEVILLE.

(Filed 4 December, 1912.)

1. Cities and Towns—Sewerage—Special Benefits—Assessments—Pleadings.

When the charter of a city expressly provides that only such property as is specially benefited by the construction of sewers shall be liable to assessments, and the owner of property who had been assessed for the purposes of laying the sewer does not allege, in his action to avoid payment, that the assessment laid against his property exceeds the benefits thereby derived by him, the corporate action of the city, being within the legislative powers conferred, is valid.

2. Cities and Towns—Sewerage—Special Benefits—Assessments—Notice—Appeal—Taxation—General Fund.

When the Legislature has conferred upon a city the power to assess within a prescribed district the property of adjoining owners in accordance with the direct benefits received by them from the laying of the city's sewers in the streets, and gives them opportunity to challenge and review the assessments thus made, it is not necessary for the act to provide that, in making these assessments, it should be considered that the owners of the land were taxed for the purpose of sewerage in other parts of the town, the cost thereof being paid from the general fund of the city. *Asheville v. Trust Co.,* 143 N. C., 366, cited and applied.

3. Cities and Towns—Sewerage—Assessments—Districts—Legislative Powers—Presumptions—Appeal and Error.

A city must have laid off special districts wherein its citizens are liable to be assessed in accordance with the direct benefits received by them in constructing its sewerage system; but this may be done by the Legislature in the act authorizing it, or by the city under the power to make such improvements, and the proper exercise of such authority and the regularity of the proceedings is presumed on appeal, when the record is silent.

APPEAL by plaintiffs from *Long, J.,* at April Term, 1912, of BUNCOMBE.

This action was brought by the plaintiffs, as citizens, taxpayers, and property-owners of the city of Asheville, to restrain the collection of certain assessments charged against their property for the construction of sewers, and was heard on complaint and answer.

The motion for a restraining order was denied, and the plaintiffs excepted and appealed. The complaint is as follows:

1. That the plaintiffs are citizens and residents and the owners of real and personal property situated in the city of Asheville, North Carolina, and that the defendant, the City of Asheville, is a municipal corporation, organized under the laws of North Carolina.

2. That prior to the year 1901, the said city of Asheville, in order to enable it to construct in said city a system of sewerage, under and by virtue of the authority of the General Assembly of North Carolina, issued and sold its coupon bonds amounting to the sum of about $300,000, and with the funds thus raised laid in the city of Asheville a system of sewers, as hereinafter alleged. That said coupon bonds of the city of Asheville, or renewals thereof, are still outstanding and unpaid and bear interest payable semiannually, and the property in the city of Asheville is annually taxed to pay the interest on said bonds and is liable to be taxed for the purpose of raising funds to pay the principal of said bonds as they mature.

3. That under and by virtue of the charter of the city of Asheville as it existed prior to the year 1901, and by means of the funds and money raised by the sale of said coupon bonds, as hereinbefore mentioned, the city of Asheville laid on all of the principal streets in said city and in front of all of the most valuable property in said city, including the entire business section of said city and all of the best and most valuable residence portions of said city, a system of sewers, all of which were laid at the public expense and out of the funds derived from the sale of said bonds as aforesaid. That from said bonds, as the plaintiffs are advised and believe, sewers were laid in the city of Asheville on Pack Square, North Main and South Main streets, College Street, Woodfin Street, Spruce Street, Vance Street, Oak Street, Merrimon Avenue, Orange Street, Central Avenue, Clayton Street, Charlotte Street, Pine Street, Chestnut Street, East Street, Center Street, Hillside Street, Liberty Street, Border Street, Water Street, Penland Street, Hiawassee Street, Haywood Street, Flint Street, Cherry Street, Starnes Avenue, Cumberland Avenue, Bearden Avenue, West Chestnut

Street, Cullowhee Street, Soco Street, Montford Avenue, Watauga Street, West Haywood Street, Depot Street, Ann Street, French Broad Avenue, Philip Street, Grove Street, Ashland Avenue, Church Street, Lexington Avenue, Southside Avenue, Market Street, Davidson Street, Valley Street, Bartlett Street, and various other streets in said city. That the above mentioned streets and the sewers laid thereon are the streets and sewers in front of most of the property in the city of Asheville, and especially in front of that property which is more valuable in proportion to the size of lots and more valuable in the improvements on it than any other portion in the city of Asheville.

4. That pretending to act under and by virtue of chapter 100 of the Private Laws of 1901, section 71, and the Laws of North Carolina amendatory thereof, since the year 1901, the said city of Asheville, through its mayor and board of aldermen, proceeded to lay sewers on certain of the streets in the city of Asheville and partially on those streets on which the property of the plaintiffs above mentioned abuts, and have, by virtue of said statute and of the proceedings conducted under the same, attempted to levy assessments upon the property of these plaintiffs for the cost and expense of laying said sewers on said streets, and now claims a lien on the property of the said plaintiffs and each of them, and is threatening and endeavoring to enforce the same by virtue of said alleged claim of lien, and are threatening to advertise the same for sale by virtue of said lien, and have thus encumbered and cast a cloud upon the title of the plaintiffs to their said property, and have injured and damaged the plaintiffs irreparably. That the said city of Asheville claims assessments against the property of the plaintiffs above mentioned, for laying sewers on streets in said city and in front of their property, as follows:

W. T. Justice, McDowell Street.............$ 96.28
F. P. Ingle, Black Street...................   56.06
Mrs. Z. W. Israel, 103 Blanton Street.........   30.67
R. T. Schank, McDowell Street ...........∴..   68.40
R. T. Schank, Choctaw Avenue.............  176.00
L. L. Brookshire, Black and Brookshire streets.  102.96
H. M. Sprose, Black Street.................   18.00

| | |
|---|---:|
| H. M. Sprose, Ralph Street | 27.30 |
| H. M. Sprose, Ashland Avenue | 62.17 |
| J. O. Whitted, Black Street | 100.00 |
| James Stanback | 43.59 |
| John Lochran | 45.29 |
| J. M. Spurlin, Blanton and Phifer | 99.55 |
| C. M. Williams, Blanton | 66.12 |
| C. P. Miller, Blanton | 53.50 |
| C. R. Perry, Phifer | 21.00 |
| P. H. Thrash, Blanton Street | 137.50 |
| W. C. Bryson, Blanton Street | 34.00 |
| J. S. Foster, Phifer | 26.00 |
| A. J. Gilliam | 32.32 |
| R. N. Brookshire, Brookshire Street | 52.00 |
| H. H. Justice, Hillside Street | 19.34 |
| W. W. Goldsmith | |

5. That under and by virtue of the charter of the city of Asheville all persons owning real estate in said city are required, at the discretion of the mayor and board of aldermen of said city, and at their own expense, to connect their said property, whether improved or unimproved, with the sewers of said city, and by virtue of said authority the said city of Asheville has compelled the plaintiffs above named to connect their said property with said sewers.

6. That the property of the plaintiffs above mentioned, and all other property of the plaintiffs situated in the city of Asheville, is annually taxed to pay the interest of said bonds which were issued to raise money to lay the sewers hereinbefore referred to and mentioned in paragraph 3 of this complaint; and in addition to that, the property of the plaintiffs has been subjected to a claim of lien in favor of said city on account of the sewers laid in the streets on which the plaintiffs' said properties abut, but that none of the property situated on the streets mentioned in paragraph 3 of this complaint has been assessed for sewers laid on said streets, but the sewers laid in front of said property and used by said property were paid out of the general funds of said city and by taxation on the property of

these plaintiffs, as well as on the property of all other persons
in the city of Asheville. That the plaintiffs are advised and be-
lieve that said alleged claims of liens for sewerage assessments
on their property and on all other property situated in the city
of Asheville on which a lien is claimed for sewerage under the
same conditions are absolutely null and void, contrary to the
Constitution of the State of North Carolina, and contrary to
the Constitution of the United States, contrary to common rea-
son and common justice, unequal in the burdens which it
authorizes the mayor and the board of aldermen to impose upon
property in said city, unreasonable, unjust, and oppressive.
That the plaintiffs hereto are in most instances humble people,
and their property is of very little value as compared with the
most valuable property in said city; and when considered per
front foot on an average would not be worth one-tenth the
amount of the average value per front foot of the property men-
tioned in paragraph 3 of this complaint, as these plaintiffs
verily believe. And the plaintiffs further allege that said assess-
ments for sewers in front of their said property are for amounts
much larger than any actual benefit conferred upon the prop-
erty by the construction of such sewers, and that said assess-
ments were irregularly and unlawfully made and levied, and
are, therefore, null and void.

7. And the plaintiffs further allege that, as they are advised
and believe, the said assessments and the statute under which
they are levied are illegal, unconstitutional, and void; that the
said statute is discriminatory and if enforced against these
plaintiffs would deprive them of all their property without due
process of law and deprive them of the equal protection of the
laws; that said statute, as they are advised and believe, is con-
trary to the Constitution of the State of North Carolina, and is
therefore void; that said alleged statutes constituting a part of
the charter of the city of Asheville, which are attempted to be
enforced in this cause, and the assessments levied thereunder,
are contrary to the Constitution of the United States, and espe-
cially the fourteenth amendment of said Constitution, and if
enforced would deprive these plaintiffs of their property with-
out due process of law and deprive them of the equal protection

of the law, and the plaintiffs hereby especially plead the said Constitution of the United States and the amendments thereto and rely upon the same for protection in this cause.

Wherefore, the plaintiffs pray:

1. That an injunction be issued enjoining and restraining the city of Asheville from enforcing said assessments or collecting the money claimed by it on account thereof.

2. That said assessments be set aside and declared null and void.

3. That the plaintiffs have all such other and further relief as they may be entitled to and to the court may seem meet.

The defendant denies that it has exceeded its powers, and alleges, in its answer, that said assessments were regularly and legally made under the provisions of its charter.

A map of the sewerage system in Asheville is made a part of the record, which shows that the main sewer lines, into which other sewers empty, were constructed with the money derived from the bond issue referred to in the complaint.

The provisions of the charter of the defendant, material to this inquiry, are:

"SEC. 179.   Said board of aldermen shall, from time to time, lay, build, and construct in said city such system of waterworks, water pipes, sewerage and sewer pipes and extension of the same as to it may seem advisable, or cause the same to be so laid, built, and constructed, and shall keep the same in proper condition and repair, with proper connections, and make all necessary provisions for so doing, and shall control and regulate such system and every part thereof, and may require the owner or owners of any improved lots in said city on any public street or alley where such water and sewer pipes have been laid, or are conveniently accessible, or on any line of pipes, to connect such lot with such sewer and water pipes in the manner and at the places designated by said board of aldermen, upon like notice, terms and conditions as are hereinbefore provided for paving sidewalks; and upon failure of the owner or owners to so connect the same within the time in such notice required, said board of aldermen may enter upon such lot and make such

connections and charge the costs thereof against said lot in the same manner as hereinbefore provided in the case of sidewalks, and such costs so charged shall be collected and shall constitute a lien upon such lot in the same manner and to be enforced in the same manner and with like powers and privileges as is hereinbefore provided in regard to sidewalks. And in all cases where a sewer shall be laid by or under the authority of said board of aldermen in any street in said city, the costs and expense of laying and constructing same shall be assessed against the property abutting on each side of said streets, as well as against all property within the radius of benefit arising from such improvements, though not actually abutting thereon; the property liable to assessment hereunder and the apportionment of the costs and expense of said improvement against the same in case of disagreements between the owner or owners thereof and said board of aldermen as to the pro rata part of said costs and expense which should be assessed against any piece or parcel of property benefited as aforesaid, to be determined by a jury of seven freeholders of said city unconnected by consanguinity or affinity with any of the persons supposed to be affected by said improvements, and summoned to pass upon said questions above mentioned, by any policeman of said city upon writ to him directed by the mayor under the seal of said city, commanding that such be done, and succinctly describing the duties to be performed by such jury. Each juror shall be sworn by the mayor or any other person competent to administer oaths in this State, to faithfully and impartially execute the duties of his office before entering upon the performance thereof. Each member of said jury summoned as aforesaid shall repair to the mayor's office at a date and hour to be named in the mayor's said writ, not more than five days after the date of the same, for the purpose of being sworn as hereinbefore required. Upon the assembling of said jury at the mayor's office, any person summoned as aforesaid, upon excuse offered satisfactory to said mayor, may by him be excused from further service; and it shall be the duty of the mayor to require any policeman of the city to forthwith summon another person having the qualifications hereinbefore described to serve upon said jury in the place

and stead of the juror so excused by the mayor. Immediately after being sworn as aforesaid, said jury as finally constituted shall proceed without unnecessary delay to view the street and section in which said improvement has been or is proposed to be made, and all the property deemed by them to be beneficially affected thereby as hereinbefore described, and shall within a reasonable time thereafter, not exceeding five days, and after due consideration thereof, make up their report, a majority concurring therein, in which shall be generally described each piece of property deemed by them to be beneficially affected by said improvement, together with the amount of the special benefit thereto arising from such improvement, and giving also the name or names of the supposed owner or owners thereof. In case of inability of said jury, with a majority concurring, to agree upon the special benefit to any piece or parcel of land as aforesaid arising from such improvements, after being together and considering same for twenty-four hours, they may be excused from further consideration thereof by said mayor, and shall file their report as hereinafter required concerning the pieces or parcels of land upon which they shall have been able to agree; and the mayor may, by writ, as hereinbefore described, immediately require another jury of seven persons, possessing the same qualifications as said first mentioned jury, to be summoned and qualified as aforesaid, who shall forthwith proceed, in the manner and within the time hereinbefore mentioned, to pass upon and determine the questions left undetermined by said first mentioned jury, and to file their report in the manner and within the time herein required in cases where there is no disagreement upon the part of the jury. After making up their report as herein required, said jury shall forthwith file the same with the city clerk of Asheville, who shall submit it to the board of aldermen at their next regular meeting after the day on which the same is filed as aforesaid, for their action. Said board of aldermen shall, at said meeting or at any regular meeting thereafter, not exceeding twenty days from the date of the submission of the same, require the city clerk to publish a notice of not less than twenty days in some newspaper published in said city and of general

circulation therein, to the effect that said jury has made its report and prorated and assessed the costs and expense of said improvement (which shall be described generally) against the property specially benefited thereby, naming, where possible, the owners thereof, or the party in whose name said property may be listed for taxation, or in case the name of the owner cannot be ascertained, and said property is not listed for taxation, then the name of the party occupying the same, if any, and admonishing all persons interested therein, particularly those named in said notice, that said report has been filed with the city clerk, and they and each of them are required to be and appear at a regular meeting of said board of aldermen, to be specified in said notice, and to be held not less than ten days after the date of the expiration of said notice, and show cause, if any should exist, why said report should not be approved and confirmed by said board of aldermen, and at such meeting said board of aldermen shall take up and consider the report of said jury, and hear any competent evidence from any person interested in the property affected thereby touching any matters covered by said report, and to that end said board of aldermen are hereby constituted a court with power to send for persons and papers, to provide for the examination of witnesses, and to punish witnesses or others, in proper cases, for contempt of court. After hearing evidence as aforesaid, and duly considering said report, or, in case no objection is made, after duly considering said report, said board of aldermen may approve, correct, amend, modify, or reject the same, or any item therein, as to them may seem just and proper, and said report or said corrected, amended, or modified report, as the case may be, shall then be entered in full in a book to be provided for that purpose by the board of aldermen, and to be entitled 'Record of Sewer Liens,' which book shall be properly and accurately indexed, as near as may be, in the name of the owner of the property affected by said improvement, so as to enable the public, to whom said book, with its index, shall always be open and accessible during business hours, to readily ascertain what property may be affected by said assessment and the amount of said assessment against each piece or parcel of property. Any

aggrieved party may appeal from the final determination of said board of aldermen with respect to said report, or any item therein, as aforesaid, within ten days after the date of the registration thereof, as above provided, to the next term of the Superior Court of Buncombe County, beginning more than ten days after the date of such appeal, by serving notice of appeal upon the mayor of said city, and specifying therein the particulars in which he considers himself aggrieved by such determination of such board of aldermen. On any such appeal the appellate court shall have power to increase, affirm, or diminish the amount of the item appealed from, but not to adjudicate the necessity of the improvement, and such appeal shall in no wise hinder, obstruct, or delay said improvement. The amount of any special benefit or enhanced value so assessed against any premises by the board of aldermen of said city, or an appeal adjudged against the same, shall upon such final determination of said board of aldermen, with respect thereto, in case no appeal is taken therefrom, or upon final judgment of the court in case of any such appeal, be and become a lien in favor of said city, on said property on which it has been so assessed or adjudged, as of the time of such final determination on the part of the board of aldermen, and shall be paid to the city in three equal annual installments, one, two, and three years respectively, together with interest on each installment at the rate of 6 per cent per annum from said date. If any installment shall remain unpaid for thirty days after its maturity, all installments then unpaid shall become due, and the property and premises so assessed or charged shall be sold for the payment of the same, and of the expenses of such sale and costs, by the tax collector of said city, under the same rules, regulations, restrictions, rights of redemption and other provisions as are prescribed in this charter for the sale of real estate for unpaid taxes. The installments of the assessments herein mentioned, or any part of same, may be assigned and transferred by said city either absolutely or conditionally, as to the board of aldermen may seem best."

The plaintiffs resist the collection of the assessments because:

"1. It (the charter) requires all of the cost and expense of the sewers to be assessed against private property.

"2. Because, in considering the benefits to be derived by the property adjacent to the sewers, the statute does not provide that the jury shall take into consideration the fact that the sewers in all other parts of the city were laid out of the general funds, and that the particular property in question is subject to taxation to pay for said sewers laid out of the general funds.

"3. This statute is subject to the same objection and to the same defects which this Court found to exist in section 65 of chapter 100, Private Laws 1909, as pointed out in the case of *Ashevillle v. Trust Co.,* 143 N. C., 360, which are that no taxing district is established within which the improvement is to be made and special benefits assessed."

*Martin, Rollins & Wright for plaintiffs.*
*J. Frazier Glenn for defendant.*

ALLEN, J. The charter of the defendant expressly provides that only such property as is specially benefited by the construction of sewers shall be liable to assessment, and it is not alleged in the complaint that the assessments against the property of the plaintiffs exceed the benefits.

This being true, the first objection of the plaintiffs to the corporate action of the defendant is fully met by the cases of *Spencer v. Merchant,* 125 U. S., 345; *R. R. v. Decatur,* 147 U. S., 190; *Paulsen v. Portland,* 149 U. S., 30; *Baumann v. Ross,* 167 U. S., 589; *Asheville v. Trust Co.,* 143 N. C., 366.

In the *Spencer case* the Court says: "The Legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading, or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of the legislative discretion"; and this is approved in the other cases cited.

The second objection of the plaintiffs is not that the jury did not consider the fact that the property of the plaintiffs was subject to taxation to pay interest on bonds issued to construct

sewers in other parts of the city of Asheville in estimating bene-fits, but that the statute did not require this to be done. A sec-tion of the same charter, relating to paving, with similar pro-visions as to assessments, was sustained in *Schank v. Asheville,* 154 N. C., 40, and in none of the statutes we have examined, and which have been approved, have the elements entering into the estimation of damages and benefits been defined, and for the reason that they cannot always be foreseen.

In *Paulsen v. Portland, supra,* an ordinance was approved which required assessments for sewers to be made on property "directly benefited," without defining what should be taken into consideration, and it was held: "A sewer is constructed in the exercise of the police power for the health and cleanliness of the city, and the police power is exercised solely at the legislative will. Notice by publication is a sufficient notice to the tax-payer in proceedings for the assessment of a tax on his prop-erty for the construction of a sewer. If provision is made for notice to and hearing of each proprietor at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law."

It was also said in *Raleigh v. Peace,* 110 N. C., 40: "The power to make such assessments must be clearly authorized by the Legislature, but it is not necessary, and 'of course not to be expected—indeed, it is scarcely conceivable—that the Legisla-ture should, in conferring authority upon local bodies, specify in minute detail the incidents of the power. The courts gen-erally hold that necessary incidental and subordinate powers pass with the grant of the principal power. Any other ruling would make it practically impossible to frame statutes capable of reasonable enforcement. In matters of street improvements and local assessments, as in kindred matters, it is generally held that a power clearly conferred in general words will carry all the incidental authority essential to the execution of the power in ordinary and appropriate methods.' "

In the charter of the defendant ample opportunity is given to the owner to challenge and review charges against his prop-

erty, and no claim is made by either of the plaintiffs that he did not have notice of the proceedings or that he was refused a hearing.

The last position of the plaintiffs would find support in *Asheville v. Trust Co., supra,* if it appeared that no taxing district had been laid off; but while the case referred to holds that the designation of the district is necessary, it is also there decided that this may be done in the legislative act, or by the city under the power to make the improvements and to levy the assessments.

The presumption is in favor of the regularity of the proceedings, and the presumption is strengthened by the fact that the plaintiffs have made no complaint until the improvements, which enhance the value of the property, have been completed.

The powers of municipal, corporations as to assessments for public improvements are fully discussed and the authorities reviewed by *Justice Hoke* in the recent case of *Tarboro v. Staton,* 156 N. C., 508.

Upon a review of the record, we find no error.

Affirmed.