E. F. ADAMS et al. v. W. T. JOYNER and NANNIE M. HOSTETTER et al.

(Filed 11 March, 1908).

1. **Water and Water Courses—Drainage—Revisal, 4016—Judgment Not Set Aside—Motion.**

   In an action brought for the drainage of lands under Revisal, 4016 *et seq.,* the judgment upon motion thereafter made will not be set aside merely upon the ground that a similar proceeding had been prosecuted to judgment between several of the parties.

2. **Water and Water Courses—Judgment—Motion to Set Aside— When Made—Estoppel.**

   If a former judgment in a similar proceeding has not been pleaded in an action for drainage of lands under Revisal, 4016,

as an *estoppel* or *res adjudicata*, before final judgment; the party relying thereon must move the court within one year to set the judgment aside for excusable mistake or inadvertence. (Revisal, 513).

3. **Water and Water Courses—Drainage—Statutes—Interpretation.**

While the various statutes for the drainage of swamp lands in Eastern North Carolina have not the same provisions in all respects, they have been collected and are to be found in Revisal, ch. 88, and should be construed to harmonize and constitute, with such variations, a system of drainage laws for the State, and are constitutional.

4. **Water and Water Courses—Drainage—Revisal, 4017—Commissioners' Report—Cost of Work Apportioned.**

The cost of the work to be done in the drainage of lands under Revisal, 3996, is not required under section 4017, and cannot, for its uncertainty of amount, be set out in the report of the commissioners appointed. It is a compliance with the statutes when the portion of the work to be done by the landowners is set out.

5. **Same—Notice Required.**

Before any specific amount may be adjudged against a landowner as a lien on his land, under proceedings for the drainage of lands, he is entitled to be heard, after notice, as to whether the assessment made by the commissioners was unjust or oppressive.

6. **Water and Water Courses—Drainage—Judgment—Oppressive Assessment.**

As to whether the judgment could be modified to meet the ends of justice regarding an oppressive assessment of costs against lands in a proceeding for drainage, *quære*.

CIVIL ACTION, heard by *Guion, J.*, at chambers, in NEW BERN, 4 January, 1908.

This is a motion by Mrs. N. M. Hostetter, one of the defendants, to set aside and vacate the judgment herein, rendered by the Clerk of the Superior Court of Craven County. The record discloses the following case: On 6 February, 1906, plaintiffs, E. F. Adams and others, began a special proceeding before the Clerk of the Superior Court of Craven County against defendants, W. T. Joyner and others, for the purpose of having certain lands drained, the mode thereof ascertained, and the cost apportioned between the owners of the lands, etc.

Summons was issued and served upon defendants 7 March, returnable 31 March, 1906. On 9 March, 1906, the plaintiffs filed their petition in the Superior Court, alleging that they and defendants were the owners of certain lands, of which a general description was given; that a portion of the lands of plaintiffs and defendants are flat and "swampy" and the drainage thereof imperfect. They pointed out the manner in which they were at that time drained, and suggested the manner in which they should be drained. They say, among other things: "The ditch now known as the Big Cat Tail Ditch should be cleaned out and repaired, and extended 200 yards beyond its present mouth, or lower end, and the upper part, or head of the same, extended further up and through the lands of the parties hereto, and to a point where it would be equal to the purpose of this proceeding; that the Little Cat Tail Ditch should be incorporated and cleaned out, and extended so as to drain the lands through which it runs; and that the four-foot ditch, known as David Tripp's Four-foot Ditch, be cleaned out and put in good order." They pray that commissioners be appointed, etc. On the return day of the summons, 31 March, 1906, the Clerk made an order reciting that the summons had been duly served, and that no answer had been filed. Commissioners were appointed, with specific directions in respect to their duties, etc. They were directed to make report of their action, etc. On 17 May, 1906, the commissioners filed their report, stating that, after being duly sworn, they viewed the lands of plaintiffs and defendants, and found that they cannot be conveniently drained, except through the lands of the defendants and through Big Cat Tail and its tributaries. They proceed to direct the place at which the canal shall begin, and to what point it shall extend. They direct the manner in which the drainage shall be made, giving the names of the persons owning lands, the number of acres affected, and the value thereof per acre. In these respects the report is full and explicit, concluding:

"All lands shall be responsible for all cost and expense of cleaning out and keeping said ditches and canal in good order. All parties shall keep the banks of said ditches and canal cleaned off on their farms, at their own expense." On 23 July, 1906, the Clerk made an order reciting that no exceptions had been filed to the report.

"It is now considered by the court, and ordered and adjudged, that the said report be and it is hereby in all respects confirmed; that the parties to this proceeding, their executors, administrators and assigns, shall contribute, in money or labor, to the expense of construction of the ditch or canal described in said report, and of keeping the same in good condition, in accordance with the provisions of said report and in the manner therein provided, in proportion to the valuation of the lands described in the petition and report, owned by plaintiffs and defendants, respectively."

Provision is made for the payment of the cost and allowance to the commissioners.

On 15 November, 1906, the defendant, Mrs. N. M. Hostetter, after notice to the other parties, moved the Clerk to vacate and set aside the judgment. She filed the motion in writing, setting forth the grounds thereof in full.

A proceeding was had between some of the same parties for the drainage of a portion of the same lands during the year 1891. A copy of the proceeding is filed in the record. The effect of the present proceeding is to annul the former proceeding. She attacks the present proceeding for a number of reasons. The Clerk denied the motion, and defendant appealed to the Judge, who affirmed his judgment. Defendant appealed to this Court.

*R. A. Nunn* and *W. D. McIver* for plaintiffs.
*George V. Cowper* for defendants.

CONNOR, J., after stating the case: The first cause assigned by defendant for setting aside the judgment rests upon the

fact that, during the year 1891, a proceeding similar to the one before us was brought and prosecuted to judgment, between several of the parties to this proceeding, for the drainage of the same or a part of the same lands included in the present petition. A record of said proceeding is set forth and made a part of her petition or motion. If this proceeding and judgment of 1891 covered and provided for the drainage of the lands now sought to be drained—in other words, if they included the subject-matter of this proceeding—they should have been pleaded as an *estoppel,* or *res judicata,* before the order appointing the commissioners was made, or certainly before the final judgment. If, by excusable mistake or inadvertence, this was not done, a motion within one year to set aside the judgment would have been in time. Revisal, sec. 513. The court had no power to do so, for that reason, after the expiration of the time fixed by the statute. The Clerk does not find as a fact that the record in the former proceeding includes the subject-matter of this proceeding. It does not so appear upon the face of the record. The defendant insists that this proceeding does not conform to either of the statutes providing for drainage, and that, from any point of view, the judgment is irregular. An examination of the record, in the light of Revisal, sec. 4016 *et seq.,* indicates that the proceeding is based upon that statute. It will be noted that this and the two succeeding sections are found in the act of 1899 (chapter 253), as amended by Acts 1891, ch. 73. The only change made by the Revisal is that the manner of enforcing the judgment is that prescribed by section 3993 of the Revisal. The defendant treats the proceeding as having been brought under section 3996 *et seq.* of the Revisal, and attacks the report because it does not conform to the provisions of section 3997. The petition indicates that the draughtsman had before him the act of 1889, ch. 253; Revisal, section 4016. It substantially conforms to the language of that section. The summons was issued and order appointing

147—6

commissioners made in strict compliance with the statute. The report of the commissioners finds that the lands of plaintiffs and defendants cannot be drained except through the lands of the defendants and through Big Cat Tail and its tributaries. It fixes the point at which the canal shall begin and end, its width, depth and fall. It then directs that the old drain shall be cleaned out. Several ditches are directed to be cleaned out. "All parties shall come on equal footing up to the mouth of David Tripp's Four-foot Ditch." The report proceeds to find the number of acres of land belonging to each party, and the value thereof per acre, which shall contribute to the cost. Certain duties are imposed upon David Tripp, Sr., and David Tripp, Jr. "Then all the other parties shall continue said canal to the mouth of Little Cat Tail Ditch on equal footing."

Without pursuing the details of the report, it is evident that the commissioners were intelligent men and understood what they were doing. There is no suggestion that there is any obscurity in the report, or that the parties do not understand the manner in which their lands are to be drained and the extent of the burdens imposed upon them. We were inclined to the opinion, at first, that the commissioners should have found and set out the cost of the work, so that a judgment could be drawn fixing the exact amount to be paid by each landowner. A careful examination of section 4017 shows that this is not required, and, upon reflection, it is manifest that it could not be done. The report of the commissioners complies with the statute. The portion of the work to be done by each landowner is set out. The work to be done and paid for in proportion to benefits received is to be ascertained by taking the cost of the work and apportioning it among the owners, upon the basis of the money value of the lands affected, the facts necessary for the calculation being set out. It would be impracticable to ascertain in advance just what the work will cost. The statute contemplates that

the judgment shall fix the liability and the report furnish the basis for fixing the amount due, as prescribed by section 3993. Referring to section 3992, we find the procedure prescribed: "When the canals, or ditches, for the reparation of which more than one person shall be bound, * * * shall need to be repaired, any of the persons so bound may notify the others thereof, and of the time he proposes to repair the same; and thereupon each of the persons shall jointly work on the same and contribute his proportion of labor till the same be repaired or the work cease by consent."

"Section 3993. In case the person so notified shall make default, any of the others may perform his share of labor and recover against him the value thereof, on a notice to be issued for such default, in which shall be stated on oath the value of such labor, and, unless good cause to the contrary be shown on the return of the notice, the court shall render judgment for the same, with interest and cost." The judgment is declared to be a lien on the lands. While the several statutes, passed at different times, to provide for the drainage of the swamp lands of Eastern North Carolina have not in all respects the same provisions, they have been collected and are found in the Revisal of 1905, in chapter 88. They should, as far as practicable, be so construed as to harmonize and constitute, with such variation as they contain, a system of drainage laws for the State. Their constitutionality has been settled by several decisions of this Court. We do not think that the defendant is entitled to have the judgment rendered upon the report of the commissioners set aside. Before any specific amount can be adjudged against her land, she is entitled to be heard. It may be that, if, by reason of changed conditions, the assessment made by the commissioners becomes unjust or oppressive, a motion, after notice, could be entertained to have the judgment modified to meet the ends of justice. The purpose of the statutes is the promotion of agriculture, the increase of food for the people. They should be

so construed and so administered that this purpose be accomplished. The commissioners who are appointed to view the land, ascertain the facts and assess the amounts to be paid or labor to be performed are usually intelligent farmers, competent to do justice in the premises.

Upon a careful examination of the entire record, we concur with his Honor in denying the motion. It is so ordered.

Affirmed.