## IN RE LYON SWAMP DRAINAGE DISTRICT.

### (Filed 27 March, 1918.)

**1. Drainage Districts—Judgments—Modifications—Changes—Courts.**

The judgment rendered upon the organization of a drainage district does not conclude the filing of supplementary petitions, for such proceedings are subject to modification from time to time by the landowners in the district or by the supervisory orders of the court, with the restriction that no radical change will be made or any change that would throw additional costs upon the landowners therein without benefit to them.

**2. Same—Supplementary Petition—Procedure.**

Where it is made to appear that the stopping of a main canal within a drainage district short of the distance originally planned is a detriment, and causes damage to the health of those living therein, and is also insufficient, it is proper, upon the petition of some of the landowners in the district to extend the canal at their own cost, for the court to appoint "viewers" with direction to report their action, subject to the approval of the court.

APPEAL by Drainage Commissioners from *Devin, J.,* at chambers, 25 January, 1918; from PENDER.

This is a petition by certain members of the Lyon Swamp Drainage District. They do not attack the formation of the original district nor the bond issues on account thereof, nor are they seeking to enjoin the collection of taxes, or in any way to change the boundaries of the district, or the decrees already made. The petitioners have paid all their assessments for the expenses in forming the district and its maintenance and the taxes levied for the payment of the bonds.

This is a supplementary petition, after due notice given to the drainage commissioners, filed before the clerk, who held that the landowners within said district above the Vollers line should be permitted, without cost to the landowners below that line, to extend through their lands a canal sufficient in size and depth to drain and carry off the waters from said lands and to discharge the same into the main canal already constructed.

The clerk before whom the petition was filed finds as facts that the main canal extending up Lyons Swamp to the Vollers line is amply sufficient to accommodate and carry off the water from the lands in said district above that line, and it would be beneficial to said canal to have this additional water turned through it, which will tend to keep it open and clear of trash and vegetable matter; that said lands above the Vollers line owned by the petitioners are a part of said drainage district and have been paying assessments regularly, though their lands have received no actual benefit from the drainage; and that the Worth

and Vollers farms in said district below the Vollers line are not now sufficiently drained, but if the said canal should be extended as desired by the petitioners of sufficient size and depth to drain the lands above the Vollers line, it would benefit the Worth and Vollers farms below that line by giving them sufficient drainage, and that the canal below is amply sufficient to take care of the water coming down from above if the canal is extended. The clerk held that the landowners above the Vollers line should be allowed to drain the waters from their lands into the said main canal without being required to pay anything for the privilege, but that the extension of the canal through the lands of the petitioners should be provided at their own expense without any cost to the landowners below said line. The clerk directed that the line of the extension of the canal from its present head through the lands of the petitioners should be selected, marked and designated by the board of viewers, whom he named, and who should lay out the route and report their action for approval by the court, together with the cost of digging and constructing such canal.

From this order the drainage commissioners appealed to *Devin, J.,* who found substantially the same facts, and, further, that the extension of the canal now prayed for was part of the original plan of the district, and that by stopping the canal at the Vollers line the bottom of the canal had silted up a foot above the depth called for in the original plan for a distance of 2,000 yards, with the result that it had retarded the flow of water down the said canal, and that by extending the canal through the property of the petitioners to conform to the original plan, it would have the effect to deepen the present canal for the distance of 2,000 yards, and that the natural drainage of the water from the land of the petitioners is through said main canal, the extension of which will benefit said land, which is very fertile, and will produce abundant crops if such adequate drainage is provided, but that now the lands of the petitioners above the Vollers line are too wet for cultivation for lack of the drainage which the petitioners are asking to make at their own cost, and that the stagnation of water in this territory is such as to threaten the health of the community, including the village of Centerville, which will be much improved by this drainage.

All the petitioners were parties to the original proceeding, and their lands are already within the district. They have paid all assessments without deriving any adequate benefit from said district in consequence of the amendment of the original plan which stopped the main canal at the Vollers line, instead of carrying it through the lands of the petitioners as originally provided.

The judge affirmed the action of the clerk, and the commissioners appealed.

IN RE LYON SWAMP DRAINAGE DISTRICT.

*Bayard Clark* for petitioners.
*C. D. Weeks* for Drainage Commissioners.

CLARK, C. J.   In *Adams v. Joyner,* 147 N. C., 77, almost the identical question was presented and decided.   The defendant there contended that the formation of the district had been settled in a drainage proceeding in 1891, and pleaded estoppel and *res judicata.*   The Court, however, held against this contention and the point came fairly before the Court in *Staton v. Staton,* 148 N. C., 490.   The Court held that the judgment which had been entered in 1886 was "not a final judgment conclusive of the rights of the parties for all time, as in a litigated matter, but it is a proceeding *in rem* which can be brought forward from time to time, upon notice to all the parties affected, for orders in the cause, dividing (as here sought) the amount to be paid by each of the new tracts into which a former tract has been divided by partition or by sale; to amend the assessments when for any cause the amount previously assessed should be increased or diminished; for repairs; for enlarging and deepening the canal, or for other purposes, or to *extend the canal* and bring in other parties.   It is a flexible proceeding, and to be modified and molded by decrees from time to time to promote the objects of the proceeding.   The whole matter remains in control of the court."

We think this expresses the intention of the statute.   Subsequent events, such as the silting up of a canal, or washouts by reason of torrential rains, or other causes, may cause a necessity for some changes in the plans originally adopted, or experience may point out unforeseen defects, and for this and other causes the corporate body itself can make proper changes in its plans, or they can be ordered upon supplementary petition before the clerk, subject, however, in both cases to the rule that there can be no radical change made in the plan marked out in the original proceedings, or any that will be a detriment to the rights of the bondholders or to the other proprietors within said district.   In *Gibbs v. Drainage Comrs., ante,* 5, this Court approved the action of the drainage commissioners in raising the assessment for maintenance which was made necessary by changed conditions.

In this case it has been proven by experience that the dropping off from the original plan of the extension of the canal as now proposed has made the drainage district an injury, not a benefit, to the petitioners, and has caused stagnant water to be ponded upon their lands to the detriment of cultivation and the impairment of the health of the community, and the board of viewers were directed to lay out and report the location and cost of the proposed extension, which, if approved by the court, shall be made at the sole cost of the petitioners.

In *Adams v. Joyner,* 147 N. C., 83, the Court, discussing the right of the court to make orders from time to time in the regulation of drainage matters by reason of changed conditions, says: "The purpose of the statutes is the promotion of agriculture, the increase of food for the people. They should be so construed and so administered that this purpose be accomplished."

In *Staton v. Staton, supra,* the Court, after holding that it is not necessary to keep such cases on the docket, says: "The proceedings are not highly technical, but are intended to be inexpensive and to be molded from time to time *by the orders of the court* as may best promote the beneficial results contemplated by the statute."

The cases cited by the counsel for the appellants are all where an attack was made upon the formation of the district, or to enjoin the collection of taxes, or to withdraw lands from the district. In *Griffin v. Comrs.,* 169 N. C., 643, relied on by appellants, the Court declined to enjoin the collection of taxes because the right to object not having been taken at the proper time, it had been waived, but says that the plaintiffs might proceed against the drainage commissioners as to other matters.

It was intended that these proceedings should be flexible and subject to modification from time to time by the action of the landowners in the district or by the supervisory orders of the courts, subject, however, to the restriction that there should be no material change or any change that would throw additional costs upon the other landowners except to the extent of benefit to them.

In this case, it was found as a fact by the clerk, and the finding was approved by the judge, that the extension asked for will be a benefit to the canal already dug, and will benefit some of the owners of the lands below the Vollers line as well as those above that line while the expense shall be borne entirely by the petitioners above that line.

Upon the findings of fact, we think that the order appointing "viewers" and directing them to make a report of their action, subject to the approval of the court, was properly granted.

Affirmed.