IN RE: PERQUIMANS COUNTY DRAINAGE DISTRICT NO. FOUR.

(Filed 1 March, 1961.)

**1. Drainage § 4— Record held not to establish surplus funds of drainage district subject to orders of court.**

Where, upon motion to divert surplus funds of a drainage district to provide access to the canals for maintenance purposes, the record shows only that the bid for the right-of-way and the construction of the drainage canals in accordance with the original plan was less than the estimated cost, the record fails to show that the funds of the district are in excess of those necessary to pay the annual installments of principal and interest of the drainage bonds, if any, and the annual cost of maintenance of the drainage works, and therefore fails to show any surplus funds within the purview of G.S. 156-116 (3), and the clerk's order for the application of an assumed surplus can not be allowed to stand.

**2. Same—**

The disposition of funds of a drainage district is a matter of statutory regulation in North Carolina.

**3. Same:   Notice § 1—**

An *ex parte* order of the clerk in regard to a drainage district which order is entered without notice to the interested parties is irregular.

APPEAL by North Carolina Pulp Company from an order of *Bone, J.*, in chambers at NASHVILLE, North Carolina, on 3 November 1960.

On 26 April 1960 Frank M. Wooten, Jr., attorney for Perquimans County Drainage District No. Four, filed an unverified motion with W. H. Pitt, clerk of the superior court of Perquimans County, for the purpose of diverting surplus funds and a part of a fund for contingencies of the drainage district in order to provide access to its canals.

This is a summary of the motion:

The court has heretofore approved the final report of the board of viewers and the reorganization of the district. This report proposed that several canals be constructed in the district. The plans as heretofore approved by the court contain no provision to provide access to the canals for maintenance purposes.

Engineers of the Soil Conservation Service of the U. S. Department of Agriculture have recommended to the commissioners of the district that during the construction of the canals provision for access thereto be made to facilitate their maintenance, and have stated that the U. S. Government will pay 66.4% of the cost of the construction to provide access to the canals.

The total cost of the construction of the canals and other work needed is estimated to be $7,572.75. These figures include the cost of culverts to bridge lateral ditches and canals that drain into the main canal from adjacent lands, and of seed and fertilizer for vegetation along the banks. The U. S. Government does not pay any part of the cost of culverts. Of the estimated cost of $7,572.75, the federal government will pay $2,495.50, and the balance of $5,077.25 will be paid by the drainage district.

The low bid received by the commissioners of the district for the clearing of a right of way and the construction of the canals is $19,860.29. This bid is about $4,000.00 less than the estimated cost as shown in the final report of the board of viewers and the certificate of assessment. This report and certificate have a figure of $1,676.58 for contingencies.

It is the opinion of the commissioners of the district that it would be for the best interests of the district that this surplus fund of $4,000.00 and a part of the $1,676.58 for contingencies be used for the purpose of providing access to the canals, for the reason that this would reduce the cost of maintenance of the canals, and assure the continuing efficiency of the drainage of the canals to the same degree as when constructed.

Wherefore, movant prays that such a diversion and expenditure of funds be approved and authorized by the court.

On the same day this motion was filed the clerk of the superior court of Perquimans County entered an order finding the facts to be as alleged in the motion, and adjudging and decreeing that such an expenditure of funds be authorized and approved as prayed for in the motion.

On 3 May 1960 the North Carolina Pulp Company, which owns Tracts Nos. 34 and 34A in the drainage district, excepted to the clerk's order, and appealed to the Superior Court, assigning as errors practically all the findings of fact and the adjudication.

This appeal came on to be heard by consent of the parties by Judge Bone in Nashville, North Carolina, on 3 November 1960. At this hearing it was admitted that the North Carolina Pulp Company owns about 3,500 acres in the drainage district, subject to assessment. Judge Bone's order states that he heard and considered arguments by the attorneys for movant and the North Carolina Pulp Company, and then he adjudged and decreed in substance: One. The order of the clerk entered 26 April 1960 is affirmed and approved, with the explicit provision that the commissioners of the drainage district are not to expend funds for the purposes set forth in the motion and the order of the clerk, until they have definitely ascertained that there will be a surplus, and only the surplus as existing shall be used for said purposes without further orders of the court or compliance with the provisions of the drainage laws of the State relating to assessments for the maintenance of the canal. Two. The exceptions and appeal filed by North Carolina Pulp Company are dismissed. It seems that no evidence was introduced at the hearing before Judge Bone.

From the order, North Carolina Pulp Company appeals.

*Frank M. Wooten, Jr., By David E. Reid, Jr., for Appellee.*
*Norman & Rodman for Appellant.*

PARKER, J.   The North Carolina Pulp Company states in the record its "only exception is to the conclusions of law of the trial judge." It does not on this appeal challenge the findings of fact made by the clerk, its exceptions to which findings were dismissed by Judge Bone.

Other than the appeal entries, the record contains only the unverified motion, the order of the clerk with the assignment of errors thereto by the North Carolina Pulp Company, and the order of Judge Bone, and a stipulation of the parties that the record shall contain paragraphs 10 and 13 of the final report of the board of viewers as filed in this proceeding.

A fair summary of the contents of the stipulation and the purpose

of the motion here is stated in movant's brief as follows: "Although the plan recommended by the U. S. Soil Conservation Service in their report included construction of maintenance roads or ways, and the final report of the board of viewers adopted the report of the U. S. Soil Conservation Service, inadvertently there was no provision included in the final report of the board of viewers for these access roads or ways along the canals. Since it had become apparent that there would be surplus funds available from the construction funds, it was deemed advisable by the commissioners to use these surplus funds to correct the ommission of the provision for access roads or ways along the canals."

The movant in his brief contends that the commissioners of the drainage district have authority under the provisions of G.S. 156-116, paragraph 3, to expend these alleged surplus funds to provide access roads or ways along the canals.

G.S. 156-116, Modification of Assessments, reads in part: "3. SUR-PLUS FUNDS. If the funds in the hands of the county treasurer at any time, arising under this section or in any other manner, shall be greater than is necessary to pay the annual installments of principal and interest, or the annual cost of maintenance of the drainage works, or both, such surplus shall be held by the county treasurer for future disbursement for other purposes as herein provided or subject to the order of the board of drainage commissioners."

We have nothing before us of the proceedings by the commissioners of the drainage district, except a fragmentary part of the final report of the board of viewers. There is nothing before us to show that the county treasurer has any funds in his hands, as to whether or not this drainage district is obligated to pay annual installments of principal and interest, or what is the annual cost of maintenance of the drainage works.

Movant alleges in his motion that there will be a surplus because the low bid received by the commissioners of the drainage district for the clearing of a right of way and the construction of the canals is about $4,000.00 less than the estimated cost of such work in the final report of the board and the certificate of assessment, and that this report and certificate have a figure of $1,676.58 for contingencies. If the estimated surplus of $4,000.00 should in fact materialize, and if the reserve of $1,676.58 for contingencies should not be used for contingencies, or any part of it, and should be paid into the hands of the county treasurer, there is nothing in the record before us to show that such funds "shall be greater than is necessary to pay the annual installments of principal and interest, (if any due), or the annual cost of maintenance of the drainage works, or both." Movant has completely failed to show the drainage district has, or will have, any

surplus funds in the hands of the county treasurer within the intent and meaning of G.S. 156-116, paragraph 3. The clerk's order upon the findings of fact made, and Judge Bone's order confirming the clerk's order as modified by him, find no support in G.S. 156-116, paragraph 3.

G.S. 156-92 authorizes drainage commissioners to keep the levee, ditch, drain, or water course of the drainage district in good repair, and that they may levy an assessment on the lands benefited by the maintenance or repair, but contains no provision for the diversion of funds to provide access to such levee, etc., from levies already made for other purposes. G.S. 156-118 and G.S. 156-123, added by Public Laws 1923, Ch. 231, have the effect of amending G.S. 156-92, and provide that the drainage commissioners may issue bonds instead of levying an assessment.

G.S. 156-93.1 provides that the board of drainage commissioners may annually levy maintenance assessments not exceeding one dollar per acre per year, but provides for no application of funds on hand for this purpose from other sources.

G.S. 156-98, pertaining to a surplus accumulating from excess assessments levied and collected to pay bonds issued by the drainage district, has no application to the facts before us on the present record.

G.S. 156-124.1 provides: "All assessments for repair, maintenance or enlargement or other improvements of any canal or canals in any drainage district shall be levied against the lands benefited by such repair, enlargement or improvement." The statute then goes on to require the giving of notice of the proposed assessments.

This court said in *In re Drainage District*, 228 N. C. 248, 45 S.E. 2d 130: "The statutes authorizing the creation, maintenance and improvement of drainage districts provide flexible procedure which may be modified and molded by decrees from time to time to promote the beneficial objects sought by the creation of the district (*Staton v. Staton.* 148 N. C., 490, 62 S.E., 596; *Adams v. Joyner,* 147 N. C., 77, 60 S.E., 725), 'subject, however, to the restriction that there should be no material change or any change that would throw additional costs upon the other landowners except to the extent of benefit to them.' *In re Lyon Swamp Drainage District, supra.* And the correct procedure to secure additional authority for improvements and proper maintenance is by motion or petition in the original cause. *Newton v. Chason,* 225 N.C., 204, 34 S.E. (2d), 70."

In *Staton v. Staton,* 148 N.C. 490, 62 S.E. 596, the Court speaking of a proceeding under our Drainage Act says: "From the nature of the proceeding, the judgment in 1886 is not a final judgment, conclusive of the rights of the parties for all time, as in a litigated matter. But it is a proceeding *in rem,* which can be brought forward from time to

time, upon notice to all the parties to be affected, for orders in the cause, dividing (as here sought) the amount to be paid by each of the new tracts into which a former tract has been divided by partition or by sale; to amend the assessments, when for any cause the amount previously assessed should be increased or diminished, for repairs; for enlarging and deepening the canal or for other purposes, or to extend the canal and bring in other parties. It is a flexible proceeding, and to be modified and moulded by decrees from time to time to promote the objects of the proceeding. The whole matter remains in the control of the court. It is not necessary, however, to keep such cases on the docket, but they can be brought forward from time to time, upon notice to the parties, upon supplementary petition filed therein, and further decrees made to conform to the exigencies and changes which may arise."

The following is stated in 28 C.J.S., Drains, § 87: "The disposition of the funds of a drainage district is a matter of statutory regulation. Ordinarily, under the various statutes such funds cannot be diverted from the purpose for which the assessment was levied, although under some statutes commissioners of a drainage district may, under the direction or approval of the court, use the money secured by assessment for any legitimate purpose of the district, and are not held strictly to the several items of the estimate." Later on this section states: *"Unexpended funds* of a drainage district are trust funds and, in the absence of some statutory provision therefor, equity has jurisdiction to distribute them among the contributors, but the landowners are not entitled to the return of such funds if there is future use for them."

G.S. 156-116, paragraph 3, provides that surplus funds, as there defined, arising from the levy and collection of assessments "shall be held by the county treasurer for future disbursement for other purposes as herein provided or subject to the order of the board of drainage commissioners." We know of no other statute of ours relating to the disbursment for other purposes of surplus funds of a drainage district derived from an assessment levied and collected, with the possible exception of G.S. 156-98 relating to an excess assessment to pay bonds issued by the drainage district, which has no application to the facts here, and with the exception of G.S. 156-135.1 relating to the investment of surplus funds of a drainage district which has no application to the facts here, nor have counsel in their briefs called any other statute to our attention.

The disposition of funds of a drainage district is a matter of statutory regulation in North Carolina. Judge Bone was in error in affirming

and approving the clerk's order as modified by him for the diversion of funds from the purpose for which the assessment was levied, for the very simple reason that the unchallenged facts found by the clerk in his *ex parte* order based on an unverified motion totally fail to show that the drainage district has, or will have, in the hands of the county treasurer any surplus funds, as defined in G.S. 156-116, paragraph 3.

This Court said in *Collins v. Highway Commission*, 237 N.C. 277, 74 S.E. 2d 709; "The clerk of the Superior Court holds no terms of court. In consequence, all motions made before the clerk other than those grantable as a matter of course or those otherwise specially provided for by law must be on notice. *Bank v. Hotel Co., supra*, (147 N.C. 594, 61 S.E. 570); *Blue v. Blue, supra*, (79 N.C. 69). The rules mentioned in this and the preceding paragraph are thus epitomized in *S. v. Johnson*, 109 N.C. 852, 13 S.E. 843: 'A party in court is fixed with notice of all orders and decrees taken at term, for it is his duty to be there in person or by attorney; but he is not held to have notice of orders out of term; nor of orders before the clerk.' " See also McIntosh, N. C. Practice & Procedure, 2nd Ed., Vol. 2, p. 555.

The *ex parte* order issued by the clerk here, in violation of the rules respecting procedural notice, is also irregular, in addition to the fatal defect above set out. *Collins v. Highway Commission, supra.*

If the drainage district has or shall have a surplus fund, as defined in G.S. 156-116, paragraph 3, whether it can be diverted for the purpose here sought in the motion, and if so, whether it can be done by order of the board of drainage commissioners, or must be done by an order of court, and whether or not a notice must be given to the interested parties in the drainage district if the board of drainage commissioners decide to enter an order, must await another day and another forum. This Court has no original jurisdiction in respect to drainage matters as provided for in G.S. Chapter 156, entitled Drainage, and in such matters passes on appeals from the Superior Court. *Woodard v. Clark*, 234 N.C. 215, 66 S.E. 2d 888.

The order of the trial judge is

Reversed.